IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| FALLS CHURCH MEDICAL CENTER, LLC d/b/a FALLS CHURCH HEALTHCARE CENTER, et al., | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. 3:18-cv-00428-HEH ) |
| M. NORMAN OLIVER, Virginia Health Commissioner, et al., | ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

## TABLE OF AUTHORITIES

Page

**Cases**

*Am. Trial Lawyers Ass'n v. N.J. Supreme Court,*
   409 U.S. 467 (1973) ............................................................................................. 9

*Arizonans for Official English v. Arizona,*
   520 U.S. 43 (1997) ............................................................................................... 6

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ......................................................................................... 1, 4

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ............................................................................................. 3

*Greenville Women's Clinic v. Bryant,*
   222 F.3d 157 (4th Cir. 2000) ............................................................................ 4, 9

*Harris v. McRae,*
   448 U.S. 297 (1980) ............................................................................................. 9

*Katz v. United States,*
   389 U.S. 347 (1967) ........................................................................................... 12

*Martin v. Stewart,*
   499 F.3d 360 (4th Cir. 2007) ............................................................................... 8

*Mazurek v. Armstrong,*
   520 U.S. 968 (1997) ............................................................................................. 2

*Melendez v. Va. State Bd. of Health,*
   No. CL17-1164 (Va. Cir. Ct. Henrico Cty.) ....................................................... 8

*New Orleans Pub. Serv., Inc. v. Council of New Orleans,*
   491 U.S. 350 (1989) ............................................................................................. 8

*Planned Parenthood of Cent. Mo. v. Danforth,*
   428 U.S. 52 (1976) ............................................................................................... 9

*Planned Parenthood of Se. Pa. v. Casey,*
   505 U.S. 833 (1992) ................................................................................. 1, 2, 3, 12

*Rodriguez de Quijas v. Shearson,*
   490 U.S. 477 (1989) ............................................................................................. 1

*Roe v. Wade,*
   410 U.S. 113 (1973) ............................................................................................. 1

*Simopoulos v. Virginia,*
   462 U.S. 506 (1983) ......................................................................................... 5, 6

*Spokeo, Inc. v. Robins,*
   136 S. Ct. 1540 (2016) ......................................................................................... 6

*Stenberg v. Carhart*,
  530 U.S. 914 (2000) .................................................................................................... 12

*Town of Chester v. Laroe Estates, Inc.*,
  137 S. Ct. 1645 (2017) .................................................................................................. 7

*Whole Woman's Health v. Hellerstedt*,
  136 S. Ct. 2292 (2016) ........................................................................................ passim

**Statutes**

Va. Code Ann. § 18.2-71 ................................................................................................ 12

Va. Code Ann. § 18.2-72 ............................................................................................ 2, 12

Va. Code Ann. § 18.2-73 ........................................................................................ passim

Va. Code Ann. § 18.2-76 ....................................................................................... 2, 3, 12

Va. Code Ann. § 32.1-27(A) .......................................................................................... 12

Va. Code Ann. § 32.1-123 ........................................................................................ 5, 6, 7

Va. Code Ann. § 32.1-127 .................................................................................... 4, 5, 7, 12

Va. Code Ann. § 32.1-136 .............................................................................................. 12

**Other Authorities**

12 VAC 5-412-90 ........................................................................................................... 11

12 VAC 5-412-100 ......................................................................................................... 11

2010 Op. Va. Att'y Gen. 140 ............................................................................................ 7

28 Va. Reg. Regs. 914 (Jan. 16, 2012) ........................................................................... 10

**Rules**

Fed. R. Civ. P. 12(b)(1) ......................................................................................... 1, 6, 7, 13

Fed. R. Civ. P. 12(b)(6) ....................................................................................... 1, 6, 11, 13

The Supreme Court has repeatedly recognized and reaffirmed a woman's constitutional right to obtain an abortion. See, *e.g.*, *Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292 (2016); *Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833 (1992); *Roe v. Wade*, 410 U.S. 113 (1973). In this case, a coalition of plaintiffs has brought a broad challenge to Virginia's approach to regulating providers of abortion services. Many of the challenged laws are decades old, some of the challenged regulations are under active review, and plaintiffs make powerful arguments that certain other requirements warrant reconsideration by the Virginia General Assembly.

But a federal courtroom is not the proper venue for debating the wisdom of these policies. Instead, plaintiffs' claims must be considered under the legal framework established by the Supreme Court. And through that lens, it is clear that this Court should dismiss the complaint. Two legal principles are controlling here. *First*, only the Supreme Court can overrule one of its prior decisions. See *Rodriguez de Quijas v. Shearson*, 490 U.S. 477, 484 (1989) ("If a precedent of [the Supreme Court] has direct application in a case . . . the [lower court] should follow the case which directly controls, leaving to [the Supreme Court] the prerogative of overruling its own decisions."). And *second*, even when the Supreme Court has not previously spoken to a particular issue, under current law, the *constitutional* right to an abortion is not implicated unless a particular state regulation rises to the level of "an undue burden." See *Whole Woman's Health*, 136 S. Ct. at 2309.

Applying those principles here demonstrates why this case must be dismissed. See Fed. R. Civ. P. 12(b)(1), (6); accord *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a

claim to relief that is plausible on its face.'") (citation omitted). We begin with the claims most clearly barred by existing precedent.

1. Count IV challenges Virginia Code § 18.2-72 (Section 18.2-72), which provides that only physicians may perform first-trimester abortions. (The same physician-only requirement also exists in Virginia Code § 18.2-73 (Section 18.2-73) for second-trimester abortions.) But the Supreme Court has already ruled—both before and after it formally adopted the undue-burden standard in *Casey*—that physician-only laws are constitutional. In *Mazurek v. Armstrong*, the Court rejected a constitutional challenge to a Montana law that "restrict[ed] the performance of abortions to licensed physicians." 520 U.S. 968, 969 (1997) (per curiam); see also *id.* at 969 n.1 (listing Virginia as one of the States with a similar law). Indeed, *Mazurek* emphasized that the Court had already stated on at least three occasions before *Casey* that "States may mandate that only physicians perform abortions," *id.* at 974-75 (internal quotation marks and citation omitted), and that *Casey* itself had upheld a "physician-only requirement," *id.* at 973; see *id.* ("[T]he Constitution gives the States broad latitude to decide that particular functions may be performed only by licensed professionals, *even if an objective assessment might suggest that those same tasks could be performed by others*.") (quoting *Casey*, 505 U.S. at 885). *Mazurek* requires dismissal of Count IV.

2. Count V challenges Virginia Code § 18.2-76 (Section 18.2-76), which plaintiffs describe as imposing a "two-trip mandatory delay" on women seeking abortions. Compl. ¶ 204.

*Casey* itself forecloses that claim. In *Casey*, the Court upheld Pennsylvania's "mandatory 24-hour waiting period," concluding that it did not impose an unconstitutional undue burden. 505 U.S. at 881, 887. Like Pennsylvania's law, the waiting period imposed under Section 18.2-76(B) is, at most, 24 hours. *Casey* therefore controls and requires rejection of Count V.

The complaint is not entirely clear about what else, if anything, plaintiffs are challenging about Section 18.2-76. We therefore submit that the Court should not read the complaint as encompassing anything other than a challenge to the 24-hour waiting period. See *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007) ("[A] district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed.") (citation omitted). But even if plaintiffs intended to challenge other aspects of Section 18.2-76, such challenges would fail as a matter of law.

For example, plaintiffs object to the ultrasound requirement because providers may "use other methods of determining pregnancy and gestational age" and because there is no need for a second ultrasound if one has already been performed in a different setting. See Compl. ¶¶ 205-07. Plaintiffs make a strong case that the ultrasound requirement may be unnecessary and demeaning. But plaintiffs have not alleged facts showing that the ultrasound requirement presents a substantial obstacle to women seeking an abortion within the meaning of current Supreme Court doctrine. See *Whole Woman's Health*, 136 S. Ct. at 2309 (stating the constitutional standard).

To the contrary, the same requirements alleged by plaintiffs to be burdensome have already been considered and found permissible by the Supreme Court. In particular, the Court has stated that the Constitution permits States to enact abortion regulations that "limit a physician's discretion." *Casey*, 505 U.S. at 886. So, even if (as seems plausible) Section 18.2-76 prevents providers "from exercising their individual professional judgment and clinical expertise in determining the best approach for their patient," Compl. ¶ 205, that allegation is insufficient to state a constitutional violation under current doctrine. *Casey*, 505 U.S. at 886. *Casey* similarly reaffirmed that "the Constitution gives the States broad latitude to decide that particular

3

functions may be performed only by licensed professionals, even if an objective assessment might suggest that those same tasks could be performed by others." *Id.* at 885; accord *Greenville Women's Clinic v. Bryant*, 222 F.3d 157, 173 (4th Cir. 2000) ("The rationality of distinguishing between abortion services and other medical services when regulating physicians or women's healthcare has long been acknowledged by Supreme Court precedent."). For that reason, the burdens plaintiffs identify with respect to the requirement that the ultrasound must be performed by "a professional working under the supervision of a physician licensed in Virginia" also fail to constitute an unconstitutional burden under current doctrine. Compl. ¶ 207.

Plaintiffs also take issue with the requirement that providers offer patients various information. See Compl. ¶¶ 208-24. But the complaint does not contain any factual allegations about how offering information (not mandating that women actually receive it) "plac[es] a substantial obstacle in the path of a woman's choice" to receive an abortion that would render the requirement unconstitutional. *Whole Woman's Health*, 136 S. Ct. at 2309. To the extent plaintiffs' objections to that requirement are treated as a separate challenge, therefore, that challenge also fails as a matter of law. See *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

3. Counts I and III involve the statutory classification of plaintiffs' facilities as a category of hospital. Compl. ¶¶ 245, 248-50. Specifically, Count I challenges the portion of Virginia Code § 32.1-127 (Section 32.1-127) that defines facilities providing five or more first-trimester abortions per month—a category into which plaintiffs allege they all fall, see Compl. ¶¶ 19-22, 169—as hospitals. Count III, in turn, challenges Section 18.2-73, which requires second-trimester abortions to be performed in hospitals. Both claims fail.

4

  a. Plaintiffs' challenge to Section 32.1-127 fails because the Supreme Court has already concluded that it is constitutional to classify abortion providers as a type of hospital. In *Simopoulos v. Virginia*, 462 U.S. 506 (1983), the Court rejected a constitutional challenge to Virginia's requirement that second-trimester abortions be performed in a "hospital." *Id.* at 519. The Court emphasized the breadth of the term "hospital" under Virginia law, noting that it "mean[t] any facility in which the primary function is the provision of diagnosis, of treatment, and of medical and nursing services, surgical or nonsurgical, for two or more nonrelated individuals, including hospitals known by varying nomenclature or designation such as sanatoriums, sanitariums and general, acute, short-term, long-term, outpatient and maternity hospitals." *Id.* at 512 n.5 (quoting Va. Code Ann. § 32.1-123.1). As a result, the Court saw "no reason to doubt that an adequately equipped clinic could" obtain a hospital license. *Id.* at 518-19.

  *Simopoulos* requires rejection of plaintiffs' challenge to Section 32.1-127. Defining abortion providers as a category of hospital has no effect other than subjecting them to some amount of regulation, and the definition of "hospital" in the Virginia Code remains substantively unchanged today from what it was at the time of *Simopoulos*. See Va. Code Ann. § 32.1-123. The Supreme Court has never held—and plaintiffs do not suggest—that it violates the Constitution to subject providers of first-trimester abortion services to some amount of regulatory oversight. See *Whole Woman's Health*, 136 S. Ct. at 2309 ("[T]he 'State has a legitimate interest in seeing to it that abortion, like any other medical procedure, is performed under circumstances that insure maximum safety for the patient.'") (citation omitted). As *Simopoulos* emphasized, the constitutionality of Virginia's regulatory scheme for abortion providers thus depends on the implementing regulations, not the mere fact that abortion providers are defined by statute as hospitals. See *Simopoulos*, 462 U.S. at 515-18 (focusing on

5

the regulations as the principal dispute about constitutionality, not the statutory definition). The challenge to Section 32.1-127 therefore fails as a matter of law.

   b.  Plaintiffs' related challenge to the requirement that second-trimester abortions be performed in a "hospital" (see Va. Code Ann. § 18.2-73) fails as well. For one thing, the Supreme Court rejected precisely that argument in *Simopoulos*, 462 U.S. at 519, so Count III is subject to dismissal under Rule 12(b)(6) for failure to state a claim. But, more fundamentally, Count III must be dismissed under Rule 12(b)(1) because plaintiffs lack standing to bring it.

  To satisfy Article III's case or controversy requirement, plaintiffs must show they "have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). In particular, federal courts may not "adjudicate challenges to state measures absent a showing of *actual impact* on the challenger." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 48 (1997) (emphasis added).

  Plaintiffs here have suffered no injury in fact because they are not subject to criminal prosecution under Section 18.2-73. Section 18.2-73 requires second-trimester abortions to be "performed in a hospital licensed by the State Department of Health." Va. Code Ann. § 18.2-73. Plaintiffs argue that their facilities are not "hospitals" under Section 18.2-73, see Compl. ¶ 129, but that argument misreads Virginia law. To begin, the U.S. Supreme Court's holding in *Simopoulos* was predicated on the fact that "[t]he Supreme Court of Virginia views the word 'hospital' in [Section] 18.2-73 as referring to the definition of that term in [Section] 32.1-123.1." *Simopoulos*, 462 U.S. at 512 & n.4. Section 32.1-123.1 (today, recodified as Section 32.1-123) defines "hospital" as "any facility licensed pursuant to [Article I of Chapter 5 of Title 32.1] in which the primary function is the provision of diagnosis, of treatment, and of medical and

6

nursing services, surgical or nonsurgical, for two or more nonrelated individuals." Each plaintiff is a facility licensed pursuant to Article I of Chapter 5 of Title 32.1, and each plaintiff is a facility in which the primary function is the provision of diagnosis, of treatment, and of medical and nursing services, surgical or nonsurgical, for two or more nonrelated individuals. See Compl. ¶¶ 19-22, 168-71. Therefore, each plaintiff satisfies exactly the definition of "hospital" under Section 32.1-123 and, consistent with *Simopoulos*, each plaintiff is a "hospital" for purposes of Section 18.2-73. Accord 2010 Op. Va. Att'y Gen. 140, 141 ("Although 'abortion clinics' are not specifically mentioned, [Section 32.1-123's] definition encompasses facilities in which abortions are performed."); Va. Code Ann. § 32.1-127(B)(1) (expressly requiring plaintiffs to be licensed as "a category of hospital" under Article I of Chapter 5 of Title 32.1). As a result, plaintiffs are not subject to criminal liability under Section 18.2-73.

Despite plaintiffs' assertion that Section 18.2-73 "does not specify what type of hospital licensure is mandated" and a conclusory allegation that "[a]bortion facilities are not permitted to provide second trimester procedures," Compl. ¶ 129, there is no ambiguity in Virginia law. As shown above, the analysis is a straightforward, mechanical application of law. Because each plaintiff is, as a matter of Virginia law, a "hospital" licensed by the Board of Health, plaintiffs are not subject to criminal liability under Section 18.2-73. Accordingly, plaintiffs are not injured by Section 18.2-73 and thus lack standing to challenge that provision. See *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017) ("[A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought."). Count III therefore must be dismissed under Rule 12(b)(1) for lack of jurisdiction.[1]

---

[1] The Court lacks jurisdiction over Count VII (vagueness challenge to Section 18.2-73) for the same reason.

7

    4.    Count II challenges the administrative regulations promulgated by the Board under Section 32.1-127 "[i]n their entirety." Compl. ¶ 247. We do not believe that plaintiffs have stated a claim with respect to the regulations, see *infra* 9-11. But in any event, abstention (and dismissal of Count II without prejudice) is the more prudent course.

    Even when a federal court has subject matter jurisdiction, it may decline to consider a constitutional claim where "principles of federalism and comity outweigh the federal interest in deciding a case." *Martin v. Stewart*, 499 F.3d 360, 363 (4th Cir. 2007) (internal quotation marks and citation omitted). Two abstention doctrines support dismissal here: (1) *Burford* abstention; and (2) *Pullman* abstention. See *id.* at 363-64 ("[D]iscrete abstention doctrines 'are not rigid pigeonholes into which federal courts must try to fit cases.' Overlapping rationales motivate these doctrines and considerations that support abstaining under one will often support abstaining under another." (citation omitted)). *Burford* abstention requires "a federal court sitting in equity [to] decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are 'difficult questions of state law bearing on policy problems of substantial public import . . .'; or (2) where the 'exercise of federal review of the question in a case . . . would be disruptive of state efforts to establish a coherent policy . . . .'" *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 361 (1989) (citation omitted). Similarly, *Pullman* abstention permits courts to "abstain when the need to decide a federal constitutional question might be avoided if state courts are given the opportunity to construe ambiguous state law." *Martin*, 499 F.3d at 364.

    Both *Burford* and *Pullman* abstention are implicated in this case because there is an ongoing state lawsuit challenging the current regulations of abortion providers on state administrative procedure grounds. See *Melendez v. Va. State Bd. of Health*, No. CL17-1164 (Va.

8

Cir. Ct. Henrico Cty.). That lawsuit has been pending since April 2017, and although the Virginia circuit court recently granted in part the defendants' demurrer (the Virginia equivalent of a motion to dismiss in federal court), the court allowed the case to proceed towards trial on a variety of state-law issues that will decide the legality of the regulations. Order on Demurrer, *Melendez v. Va. State Bd. of Health*, No. CL17-1164 (June 8, 2018). Abstaining from addressing Count II therefore would serve the purposes behind both *Burford* and *Pullman* abstention by permitting: (1) Virginia to achieve a coherent policy on licensing abortion providers before the constitutionality of that policy is adjudicated, and (2) this Court to avoid deciding the constitutionality of state regulations that may be invalidated on non-constitutional, state-law grounds in a matter of months. Accordingly, to avoid deciding an unnecessary constitutional question and to allow Virginia to determine whether the existing regulations were enacted in a procedurally proper manner, this Court should dismiss Count II "without prejudice to the right of [plaintiffs] to litigate their federal claims in federal court at the conclusion of the state proceeding." *Am. Trial Lawyers Ass'n v. N.J. Supreme Court*, 409 U.S. 467, 469 (1973) (per curiam).

If this Court nonetheless elects to address Count II on the merits, plaintiffs have failed to state a claim upon which relief can be granted. *First*, most of plaintiffs' allegations are about how they, as abortion providers, are being treated differently from other medical professionals. See Compl. ¶¶ 111-26. But that type of equal-protection analysis has been rejected in a number of cases. See, *e.g.*, *Harris v. McRae*, 448 U.S. 297, 325 (1980); *Planned Parenthood of Cent. Mo. v. Danforth*, 428 U.S. 52, 80-81 (1976); *Greenville Women's Clinic*, 222 F.3d at 174. The fact that Virginia regulates abortion providers differently than other medical professionals may raise a telling policy argument. But, at least under current Supreme Court doctrine, it has little

9

bearing on whether these regulations pose an unconstitutional obstacle to women seeking an abortion.

*Second*, plaintiffs' claim fails as a matter of law because the complaint does not allege facts sufficient to show that, under existing Supreme Court precedent, the administrative regulations pose a substantial obstacle to women seeking an abortion. Although plaintiffs seek to analogize Virginia's licensing requirements to those struck down in *Whole Woman's Health*, the analogy does not fit. Unlike in *Whole Woman's Health*, plaintiffs' complaint contains no factual allegations that Virginia's current licensing requirements have dramatically reduced the number of abortion providers in the Commonwealth. Compare *Whole Woman's Health*, 136 S. Ct. at 2312 (during enforcement of admitting-privileges requirement "the number of facilities providing abortions dropped in half, from about 40 to about 20"); *id.* at 2316 (surgical-center requirement would further reduce the number of clinics "to seven or eight facilities"), with Compl. ¶ 173 (characterizing the number of providers as "limit[ed]," but not alleging any specific facts). To be sure, plaintiffs allege that the number of abortion facilities in Virginia has declined to 15 between 2009 and 2016, Compl. ¶ 189, but that is not the relevant timeframe—the initial regulations were not even effective until December 29, 2011. 28 Va. Reg. of Regs. 914 (Jan. 16, 2012), http://register.dls.virginia.gov/vol28/iss10/v28i10.pdf. And in any event, the complaint fails to attribute the decline in abortion providers to the regulations or any other Virginia law.

Lacking the sort of substantial factual predicate like that presented by the challengers in *Whole Woman's Health*, plaintiffs argue that the regulations result in their staff members having less time to "devote to individual attention, conversation, and emotional support for patients." Compl. ¶ 172. To be sure, that is an important consideration and *Whole Woman's Health*

10

mentioned similar issues in connection with Texas's regulations. 136 S. Ct. at 2318. But, critically, the Supreme Court found reduction of staff time relevant only in connection with facilities it described as "crammed-to-capacity superfacilities." *Id.* In that situation, the Court concluded that "quality of care" may decline if a handful of abortion providers were suddenly required to provide care to the entire State of Texas. See *id.* The Court did not, however, state that any reduction in staff availability to patients as a result of state regulation constituted an undue burden that would render the regulations unconstitutional. Indeed, adopting such an interpretation would be inconsistent with the general presumption that States are allowed to regulate abortion providers because compliance with *any* regulatory scheme will require *some* expenditure of time and resources.

In short, plaintiffs make arguments—persuasive to many—that the legislature or Board of Health should, as a matter of public policy, consider reducing or even eliminating these regulations. But plaintiffs have not adequately alleged that Virginia's regulations pose a substantial obstacle to women seeking an abortion in Virginia to the degree current Supreme Court doctrine would require to be unconstitutional. Accordingly, if the Court reaches the merits (which it should not) Count II should be dismissed for failure to state a claim. Fed. R. Civ. P. 12(b)(6).

5. Count VIII raises a Fourth Amendment challenge to the regulatory requirement for "biennial unannounced, warrantless inspections." Compl. ¶ 260. But that claim fails because the regulations do not authorize warrantless searches of their premises. 12 VAC 5-412-90 provides the terms under which a "duly designated employee of the Virginia Department of Health" has the right to enter the premises of an abortion provider. The provision expressly states that "[s]uch entries and inspections shall be made *with the permission* of the owner or person in charge,

unless an inspection warrant is obtained after denial of entry from an appropriate circuit court." (emphasis added). So, when an inspector arrives for a biennial site inspection under 12 VAC 5-412-100, the inspection may be held only if (a) the owner or person in charge consents; or (b) the inspector has obtained a warrant. "A search to which an individual consents meets Fourth Amendment requirements," *Katz v. United States*, 389 U.S. 347, 358 n.22 (1967), as does a search conducted pursuant to a validly issued warrant. Plaintiffs' Fourth Amendment claim thus fails as a matter of law.

6. Lastly, we address together Count VI and the challenge to what plaintiffs call the "Criminalization Laws" (Virginia Code §§ 18.2-71, 32.1-27(A), 32.1-136). Count VI challenges Sections 18.2-71, 18.2-72, 18.2-73, 18.2-76(B), 32.1-127 as well as the regulations implementing Section 32.1-127 as cumulatively imposing an undue burden. And plaintiffs challenge Sections 18.2-71, 32.1-27(A), and 32.1-136, which are general criminal enforcement statutes, in connection with each of their claims.

Under current Supreme Court doctrine, nothing about the criminal enforcement statutes or the cumulative provisions and regulations violates the Constitution. The Federal Constitution permits States to prohibit abortion in certain circumstances, so there is nothing facially unconstitutional about Section 18.2-71. See *Stenberg v. Carhart*, 530 U.S. 914, 921 (2000). There is likewise nothing facially unconstitutional about a law making it a misdemeanor if a person "willfully" violates validly promulgated health and safety regulations, see Va. Code Ann. § 32.1-27(A), or one that criminalizes operating a hospital without a license, see Va. Code Ann. § 32.1-136.

For the reasons given above, the full sweep of Virginia's laws and regulations are constitutional individually and do not become unconstitutional simply as a result of their joint

application. See *Casey*, 505 U.S. at 879-901 (addressing the constitutionality of Pennsylvania's laws individually, not cumulatively); accord *Whole Woman's Health*, 136 S. Ct. at 2310, 2314 (similar with respect to Texas's regulations). Indeed, whether the burdens are viewed individually or cumulatively, plaintiffs' complaint lacks allegations like those in *Whole Woman's Health* that are required to state a plausible claim to relief under the undue-burden test. See *id.* at 2301 (regulations would result in the closure of approximately 32 facilities, leaving only seven or eight facilities for the approximately "5.4 million . . . women of reproductive age, living within a geographical area of nearly 280,000 square miles") (internal quotation marks omitted).

\* \* \*

Plaintiffs have raised a number of cogent policy objections that warrant prompt and careful consideration by Virginia lawmakers and regulators. But well-established principles of federal court jurisdiction prevent plaintiffs from challenging provisions that do not harm them, and current Supreme Court precedent forecloses plaintiffs' constitutional challenges. This Court should thus dismiss with prejudice Counts I, IV, V, VI, and VIII for failure to state a claim under Rule 12(b)(6), Counts III and VII for lack of subject-matter jurisdiction under Rule 12(b)(1), and Count II without prejudice as a matter of both *Burford* and *Pullman* abstention.

Dated: July 13, 2018

                              Respectfully submitted,

                              **M. NORMAN OLIVER**, Virginia Health Commissioner, **ROBERT PAYNE**, Acting Director of Virginia Department of Health's Office of Licensure and Certification, **FAYE O. PRICHARD**, Chairperson of the Virginia Board of Health, **THEOPHANI STAMOS**, Commonwealth's Attorney for Arlington County and the City of Falls Church, **SHANNON L. TAYLOR**, Commonwealth's Attorney for Henrico County, **ANTON BELL**, Commonwealth's Attorney for the City of Hampton, **MICHAEL N. HERRING**, Commonwealth's

13

                                  Attorney for the City of Richmond, **COLIN STOLLE**, Commonwealth's Attorney for the City of Virginia Beach

                                  By:       /s/
                                          Matthew R. McGuire, VSB # 84194
                                          Deputy Solicitor General
                                          Office of the Attorney General
                                          202 North Ninth Street
                                          Richmond, Virginia 23219
                                          (804) 786-7773 – Telephone
                                          (804) 371-0200 – Facsimile
                                          mmcguire@oag.state.va.us

Mark R. Herring
Attorney General of Virginia

Toby J. Heytens
Solicitor General

Cynthia V. Bailey
Deputy Attorney General

## CERTIFICATE OF SERVICE

I hereby certify that on July 13, 2018, a true and accurate copy of this paper was filed electronically with the Court's CM/ECF system, which will automatically effectuate service on:

Claire Guthrie Gastanaga
ACLU of Virginia
701 E. Franklin Street
Suite 1412
Richmond, VA 23219
claire@acluva.org

Gail Marie Deady
Jenny Suhjin Ma
Center for Reproductive Rights
199 Water Street
22nd Floor
New York, NY 10038
gdeady@reprorights.org
jma@reprorights.org

Jennifer Sandman
Planned Parenthood Federation of America
123 William Street
New York, NY 10038
jennifer.sandman@ppfa.org

By: /s/
Matthew R. McGuire