# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

FALLS CHURCH MEDICAL CENTER, )
LLC d/b/a FALLS CHURCH )
HEALTHCARE CENTER, *et al.*, )
                          )
       Plaintiffs, )
                          )
v. )    Civil Action No. 3:18cv428–HEH
                          )
M. NORMAN OLIVER, VIRGINIA )
HEALTH COMMISSIONER, *et al.*, )
                          )
       Defendants. )

## MEMORANDUM OPINION
### (Defendants' Motions to Dismiss Plaintiffs' Complaint)

This is an action filed by five Virginia healthcare providers[1] who offer abortion care or services seeking declaratory and injunctive relief from what they contend are overly burdensome statutes and regulations. Plaintiffs maintain that the present regulatory regimen poses a substantial obstacle to the provision of abortion services, in violation of the Fourteenth Amendment to the United States Constitution.[2] They allege that contemporary abortion procedures, even for second trimester abortions, are extremely safe and that resulting complications necessitating advanced medical care are rare. Plaintiffs seek to enjoin enforcement of related licensing provisions, oversight

---

[1] By Order entered August 20, 2018, this Court granted Plaintiffs leave to amend their Complaint by adding an additional party. The Court granted the added party's motion to proceed under the pseudonym "Dr. Jane Doe."

[2] Defendants acknowledge, "Plaintiffs have raised a number of cogent policy objections that warrant prompt and careful consideration by Virginia lawmakers and regulators." (Defs.' Mem. Supp. Mot. Dismiss 13, ECF No. 21.)

regulations, and statutes, along with state criminal laws enacted to enforce these provisions.

The Amended Complaint (ECF No. 41) names an expansive field of public officials as Defendants, encompassing almost all associated regulatory agencies, as well as commonwealth's attorneys in jurisdictions where facilities providing abortion services are located.[3] Presently before the Court is a Motion to Dismiss Plaintiffs' Complaint[4] (ECF No. 20), filed by the Attorney General of Virginia on behalf of all Defendants, except Robert Tracci, Commonwealth's Attorney for Albemarle County, who chose to file his own Motion to Dismiss and supporting memorandum (ECF Nos. 22, 23).[5] Defendants seek dismissal of all counts under Federal Rule of Civil Procedure 12(b). Both sides have submitted memoranda supporting their respective positions. The Court heard oral argument on Defendants' Motions on September 6, 2018.

To facilitate analysis of the individual claims, the original four Plaintiffs, Falls Church Medical Center, LLC; Whole Woman's Health Alliance; All Women's Richmond, Inc.; and Virginia League for Planned Parenthood, will be referred to as

---

[3] The named Defendants include: M. Norman Oliver, Virginia Health Commissioner; Robert Payne, Acting Director of the Virginia Department of Health's Office of Licensure and Certification; Faye O. Prichard, Chairperson of the Virginia Board of Health; Theophani Stamos, Commonwealth's Attorney for Arlington County and the City of Falls Church; Robert Tracci, Commonwealth's Attorney for Albermarle County; Shannon L. Taylor, Commonwealth's Attorney for Henrico County; Anton Bell, Commonwealth's Attorney for Hampton; Michael N. Herring, Commonwealth's Attorney for the City of Richmond; and Colin Stolle, Commonwealth's Attorney for the City of Virginia Beach, each in his or her official capacities, as well as their employees, agents, and successors. They will be collectively referred to as "Defendants."

[4] Since the Amended Complaint only added a party plaintiff but was filed after the Motions to Dismiss, the Court will reference the Amended Complaint for this Memorandum Opinion.

[5] Robert Tracci's Motion to Dismiss Plaintiffs' Complaint tracks the arguments advanced by the Attorney General of Virginia. Where appropriate, he will be referred to as "Tracci."

"abortion providers" and Dr. Jane Doe will be referred to as "Dr. Doe." Where appropriate, the Plaintiffs collectively will simply be referred to as "Plaintiffs." This distinction will be particularly significant in the analysis of the standing issue.

By way of historical context, Plaintiffs chronicle the administrative and legislative development of what they argue are constitutionally offensive obstacles to a woman's right to seek an abortion in Virginia. According to Plaintiffs, although abortions in Virginia have been regulated since 1848, the genesis of the regulatory scheme at issue was a statutory amendment adopted by the Virginia General Assembly in 2011. "In March 2011, the Legislature amended an existing statute governing the regulation of 'hospitals, nursing homes, and certified nursing facilities' by adding a sentence requiring VBH [Virginia Board of Health] to regulate any medical facility that provides as few as five first trimester abortions in a month as a type of 'hospital.' Va. Code Ann. § 32.1-127(B)(1)." (Am. Compl. ¶ 67.) As a result, Plaintiffs contend that facilities providing first trimester abortion services were required to comply with a wide swath of restrictive regulations. These mandates dictated strict standards for construction, staffing, equipment, enhanced training, infection prevention, and facility security. (*Id.* ¶ 68.)

According to the Amended Complaint, as a result of its enhanced regulatory responsibilities, the VBH promulgated a host of codified requirements governing abortion facilities. These requirements included enhanced recordkeeping, personnel and staffing requirements, restrictions on employment of physicians not licensed to practice in the Commonwealth of Virginia, periodic inspections by the Virginia Department of Health ("VDH"), including allowing such inspectors to review patient records, and

3

requiring staff to provide certain medical information to patients prior to administering an abortion. (*Id.* ¶ 69.) Plaintiffs challenge these restrictive requirements as oppressive and calculated to unjustifiably limit women's access to abortion facilities.

Plaintiffs also focus their challenge on several other regulatory measures which, they allege, VDH adopted in response to legislation enacted in 1975. That legislation requires abortions performed during the second trimester of pregnancy to be carried out in a licensed hospital. Va. Code Ann. § 18.2-73. As a result, any such procedure must be performed in a facility that qualifies and meets the regulatory requirements of an outpatient surgical hospital. Plaintiffs argue that the onerous regulatory requirements governing outpatient surgical hospitals "are wholly inappropriate" for safe abortion procedures and constitute a restraint on access to them. (Am. Compl. ¶ 72.)

Plaintiffs also take issue with § 18.2-72 of the Virginia Code, adopted in 1975, the so-called "Physician-Only Law," which exempts only licensed physicians from Virginia's general criminal ban on abortion. Plaintiffs contend that this piece of legislation unjustifiably limits "the pool of abortion providers, even while advanced practice clinicians ("APCs")—including licensed nurse practitioners, CNMs, and physician assistants—safely and routinely provide abortion care, including medication and aspiration abortion, in other states throughout the country." (*Id.* ¶ 73.)[6]

---

[6] Plaintiffs also challenge the so-called "Felony Abortion Statute," Va. Code Ann. § 18.2-71, which provides criminal and civil penalties for failure to comply with governing federal and local laws and regulations. Plaintiffs point out that even after the Supreme Court's decision in *Roe v. Wade*, 410 U.S. 113 (1973), "established that the U.S. Constitution protects abortion as a fundamental right, Virginia retained the Felony Abortion Statute, which makes performing an abortion a felony by default, amending it only enough to exempt providers from penalties in select circumstances." (Am. Compl. ¶¶ 81–82.)

Finally, Plaintiffs question the so-called "Two-Trip Mandatory Delay Law," Va. Code Ann. § 18.2-76(B)–(C), as another example of the statutory scheme "restricting abortion while targeting, marginalizing, and impeding the healthcare professionals who provide abortion care as well as the patients who seek it." (*Id.* ¶ 80.) This statutory provision

> requires a pregnant person seeking an abortion to undergo a mandatory ultrasound and then delay their abortion for at least 24 hours, unless they live at least 100 miles from where the abortion is to be performed, in which case the delay is reduced to two hours. . . . [T]his requirement mandates two separate trips to a facility: one for an ultrasound and the second for an abortion. The law also requires providers to verbally offer patients the chance to view the ultrasound image, receive a printed copy, and listen to fetal heart tones, and then to obtain written certification of whether the patient declined or accepted. Va. Code Ann. § 18.2-76(B)–(C).

(*Id.* ¶ 74.)

In a related statutory provision targeted by Plaintiffs, women seeking abortion care are required to receive information concerning the procedure to enable them to provide informed consent. Women receiving such information must then wait at least 24 hours thereafter before obtaining an abortion. Va. Code Ann. § 18.2-76(A), (D). The Two-Trip Mandatory Delay Law and the informed-consent-information requirement were enacted by the Virginia General Assembly in 2001, and the ultrasound requirement was adopted in 2012. *See* 2001 Va. Acts chs. 473, 477; 2012 Va. Acts ch. 131.

Plaintiffs' constitutional challenge is framed in an eight-count Amended Complaint which contends that these regulatory and statutory provisions are overly burdensome and medically unnecessary in light of more modern, advanced procedures that are utilized to carry out abortions. Counts I through V, premised on different

theories, allege violations of "Substantive Due Process – Rights to Liberty and Privacy," including Licensing Statute, Licensing Regulations, Hospital Requirement, Physician-Only Law, and Two-Trip Mandatory Delay Law, respectively. Count VI, styled "Substantive Due Process – Cumulative Burden," is a composite claim comprised of the collective effect of the regulations and laws at issue in Counts I through V. Count VII alleges that "[t]he Hospital Requirement, in conjunction with the Criminalization Laws, is unconstitutionally vague and violates Plaintiffs' rights to due process . . . ." (Am. Comp. ¶ 266.) Finally, Count VIII focuses on provisions of the Licensing Regulations which permit "at least biennial unannounced, warrantless inspections of Plaintiffs' facilities under threat of license suspension or revocation, in the absence of probable cause to believe that any violation has occurred." (*Id.* ¶ 268.) Plaintiffs allege that such an inspection violates the Fourth Amendment. They seek declaratory and injunctive relief.

Defendants urge the Court to dismiss Counts I, II, IV, V, VI, and VIII under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, and Counts III and VII under Rule 12(b)(1) for lack of Article III standing. Alternatively, with respect to Count II, challenging the licensing regulations, the Defendants urge the Court to abstain from action and dismiss that count without prejudice in light of ongoing state, judicial, and administrative proceedings.[7]

---

[7] This Court requested a status report from the Attorney General's Office describing these proceedings in greater detail. Unfortunately, the response was unenlightening and simply indicated that the pertinent regulations were under review.

This Court's review of a motion to dismiss filed under Federal Rule of Civil Procedure 12(b)(6) is both informed and constrained by the well-pleaded facts contained in the Amended Complaint.[8] The task at hand is to determine the sufficiency of the complaint, "not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted). In considering a motion to dismiss, plaintiff's well-pleaded allegations are taken as true, and the complaint must be viewed in the light most favorable to the plaintiff. *T.G. Slater & Son, Inc. v. Donald P. & Patricia A. Brennan LLC*, 385 F.3d 836, 841 (4th Cir. 2004). Legal conclusions, however, enjoy no such deference by the reviewing court. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although Fed. R. Civ. P. 8(a)(2) only requires "a short and plain statement of the claim showing that the pleader is entitled to relief," to survive Rule 12(b)(6) scrutiny, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Before turning to the facial sufficiency of the Amended Complaint, the Court will initially address the fundamental jurisdictional requirement of Article III standing as to Counts III and VII. With respect to Count III, which challenges the requirement under § 18.2-73 that second trimester abortions be performed in a hospital setting, subject to stringent licensing requirements, Defendants rejoin that each Plaintiff facility statutorily qualifies as a hospital. "Each plaintiff is a facility licensed pursuant to Article I of

---

[8] Significant portions of the oral argument in this case strayed from the four corners of the Amended Complaint and will not be considered in the Rule 12(b)(6) analysis.

Chapter 5 of Title 32.1, and each plaintiff is a facility in which the primary function is the provision of diagnosis, of treatment, and of medical and nursing services, surgical or nonsurgical, for two or more nonrelated individuals." (Defs.' Mem. Supp. Mot. Dismiss 7.)

In further support of this contention, Defendants draw the Court's attention to a 2010 opinion of the Attorney General of Virginia concluding that the definition of "hospital," as articulated in Title 32.1, encompasses facilitates in which abortions are performed. (*Id.*) While this definition may apply to the abortion providers, it would not appear to include newly-added Dr. Doe, a physician board certified in obstetrics and gynecology. Dr. Doe's practice includes pre-viability abortion care (Am. Compl. ¶ 23), but her practice is not licensed as a hospital. (*Id.* ¶ 136.)

While Defendants "do not dispute the [P]laintiffs' standing to challenge the regulations or their statutory designation as a hospital," they reason that if Plaintiffs are not subject to prosecution under § 18.2-36, they have suffered no injury in fact. (Defs.' Reply Mot. Dismiss 7, ECF No. 28.)

Whether the alleged injury in this case, either actual or imminent, is quantitatively sufficient to satisfy Article III turns on more than simply the threat of prosecution. Plaintiffs argue that the injury resulting from the so-called "hospital requirement" for second trimester abortions includes the financially-prohibitive cost and inconvenience of complying with regulatory requirements. "Plaintiffs allege that they would have to expend significant resources to meet the Certificate of Public Need (COPN) and facility design and construction standards required to obtain an Outpatient Surgical Center

license" and meet the statutory definition of a hospital. (Pls.' Mem. Opp'n Mot. Dismiss 22, ECF No. 25.) According to Plaintiffs, if they provided second trimester abortion care in their facilities as currently constituted, "they would face loss of licensure and risk civil fines and criminal prosecution." (*Id.*)

To demonstrate standing, Plaintiffs must show actual or imminent injury which is not merely speculative or hypothetical. *Benham v. City of Charlotte*, 635 F.3d 129, 135 (4th Cir. 2011). To establish the requisite case or controversy, a "plaintiff must satisfy the three requirements that combine to form the 'irreducible constitutional minimum of standing.' Specifically, a plaintiff must demonstrate that: (1) it has 'suffered an injury in fact'; (2) there exists a 'causal connection between the injury and the conduct complained of'; and (3) a favorable judicial ruling will 'likely' redress that injury." *Va. ex rel. Cuccinelli v. Sebelius*, 656 F.3d 253, 268 (4th Cir. 2011) (citing *Lujan v. Def. of Wildlife*, 504 U.S. 555, 560 (1992)). In this case, the injury complained of is arguably traceable in large measure to the burden imposed by Defendants' regulatory action or statutory duties. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 181 (2000).

Given the alleged regulatory burden placed on abortion providers in the Commonwealth of Virginia, Plaintiffs have established a quantitatively sufficient, legally-protected interest to demonstrate standing at this stage of the proceedings to challenge the constitutional underpinnings and vagueness of the hospital requirement in Counts III and VII of the Complaint.[9] Defendants may well be correct that the original

---

[9] With respect to Count VII, viewing the implicated statutes in context, it does not appear that the language is unconstitutionally vague. However, the Court will wait for a more fulsome record before determining that these statutes create an unconstitutionally undue burden as-applied.

Plaintiffs are not subject to criminal prosecution under § 18.2-73, however, it appears that

Dr. Doe enjoys no such protection. "At least one plaintiff must have standing to seek

each form of relief requested in the complaint." *Town of Chester v. Laroe Estates, Inc.*,

137 S. Ct. 1645, 1651 (2017). Dr. Doe, at a minimum, satisfies that requirement.

Before reviewing the adequacy of the other counts of the Amended Complaint, it

is important to restate several well-settled, overarching principles guiding this Court's

hand. First, it is beyond debate that the United States Supreme Court has consistently

upheld the right of a woman to choose to have an abortion before viability, without undue

interference from the state. *Planned Parenthood of S.E. Pa. v. Casey*, 505 U.S. 833, 846

(1992) (building on the holding of *Roe v. Wade*, 410 U.S. 113 (1973)). Equally enduring

are States' "legitimate interests from the outset of the pregnancy in protecting the health

of the woman and the life of the fetus that may become a child." *Gonzales v. Carhart*,

550 U.S. 124, 145 (2007). States have a legitimate interest in ensuring that a mother's

decision to abort a child is well informed. *Id.* at 160.

The analytical framework employed by this Court is further informed by *Whole

Woman's Health v. Hellerstedt*, 136 S. Ct. 2292 (2016). In *Whole Woman's Health*,

Justice Breyer, writing for the Court noted:

> We begin with the standard, as described in *Casey*. We recognize that the
> "State has a legitimate interest in seeing to it that abortion, like any other
> medical procedure, is performed under circumstances that insure maximum
> safety for the patient." But, we added, "a statute which, while furthering [a]
> valid state interest, has the effect of placing a substantial obstacle in the
> path of a woman's choice cannot be considered a permissible means of
> serving its legitimate ends." Moreover, "[u]nnecessary health regulations
> that have the purpose or effect of presenting a substantial obstacle to a
> woman seeking an abortion impose an undue burden on the right."

136 S. Ct. at 2309 (first quoting *Roe*, 410 U.S. at 150; then quoting *Casey*, 505 U.S. at 877, 78). Justice Breyer's explanation of the Court's reasoning in *Whole Woman's Health* succinctly captures the claims animating the Amended Complaint presently before this Court.

Retreating somewhat from preexisting abortion jurisprudence, the Court in *Casey* adopted a balancing analysis—consideration of "the burdens a law imposes on abortion access together with the benefits those laws confer." *Whole Woman's Health*, 136 S. Ct. at 2309 (citing *Casey*, 505 U.S. at 887–88). The Court amplified this standard by explaining that this analysis requires a contextual, fact-based inquiry to assess the impact of the alleged regulatory burden as specifically applied. 136 S. Ct. at 2310. This precept will guide the Court's analysis of the present issues.

With respect to Count II (Substantive Due Process – Licensing Regulations), this Court also declines the Defendants' invitation to stay this litigation or abstain action in light of the pending "state lawsuit challenging the current regulations of abortion providers on state administrative procedure grounds." (Defs.' Mem. Supp. Mot. Dismiss 8–9) (referencing the matter of *Melendez v. Va. State Bd. of Health*, No. CL17-1164, which is currently pending in the Circuit Court of Henrico County, Virginia). As Plaintiffs argue, and Defendants appear to concede, the action pending in the circuit court turns on procedural compliance with state law. (*Id.*) The constitutional challenges raised in the immediate case do not unnecessarily interfere with "'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the

11

result in the case [] at bar.'" *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 253 (4th Cir. 1993) (quoting *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 361 (1989) (interpreting *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943))).

As the Supreme Court counseled in *Colo. River Water Conservation Dist. v. United States*, "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." 424 U.S. 800, 813 (1976). It is only deployed in the exceptional circumstances where deferring to the state court would clearly serve an important countervailing interest. *Id.*; *see Pomponio v. Fauquier Cty. Bd. of Supervisors*, 21 F.3d 1319, 1324 (4th Cir. 1994) (*en banc*), *cert. denied*, 513 U.S. 870 (1994). This is not such a case given the significant constitutional questions at issue, and therefore, abstention is inappropriate.

Turning to Defendants' Motions to Dismiss, to survive Rule 12(b)(6) review, Count I (Substantive Due Process – Licensing Statute); Count II (Substantive Due Process – Licensing Regulations); Count IV (Substantive Due Process – Physician-Only Law); Count V (Substantive Due Process – Two-Trip Mandatory Delay Law); Count VI (Substantive Due Process – Cumulative Burden); and Count VIII (Fourth Amendment – Protection Against Unreasonable Searches – Licensing Regulations), Plaintiffs must allege facts sufficient "to raise a right to relief above the speculative level," stating a claim that is "plausible on its face" rather than merely "conceivable." *Twombly*, 550 U.S. at 555, 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that [plaintiff is entitled to the relief sought]." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

Before conducting a closer review of the sufficiency of each claim, it is important to restate that the as-applied burden analysis is a contextual, fact-based inquiry. *Whole Woman's Health*, 136 S. Ct. at 2310. This often requires the development of a particularized record assessing the impact of a statute or regulation on a specific jurisdiction. A common element of each substantive due process claim in the Amended Complaint is the potential criminal enforcement of the regulatory provisions at issue, arguably compounding the burden on a woman's fundamental right to choose abortion before viability.[10] Furthermore, Plaintiffs' contention that the aggregate impact of the collective burdens alleged in the Amended Complaint has a compounding effect adds an additional dimension to the analysis at this stage.

Counts I through V are closely allied, alleging various violations of "Substantive Due Process – Rights to Liberty and Privacy." (Am. Compl. ¶¶ 252–264.) Plaintiffs' overarching contention is that Virginia's regulatory scheme violates the Fourteenth Amendment because it imposes an undue burden on the right to choose abortion prior to viability.

Count I focuses on Va. Code Ann. § 32.1-127(B)(1). In pertinent part, this statute provides that "facilities in which five or more first trimester abortions per month are performed shall be classified as a category of 'hospital.'" § 32.1-127(B)(1)(v).

---

[10] In their Reply Memorandum, Defendants highlight several relevant Supreme Court decisions addressing the facial constitutional soundness of certain abortion regulations and procedures. (Defs.' Reply Mot. Dismiss 3.) Obviously, these decisions are *stare decisis* and will be accorded proper deference in the context of their application to the claims before this Court. Claims contending undue burden are necessarily fact driven suggesting as-applied analysis. However, as the Supreme Court noted in *Whole Woman's Health*, "[n]othing prevents [a] Court from awarding facial relief as the appropriate remedy for petitioners' as-applied claims." 136 S. Ct. at 2307.

According to Plaintiffs, this classification triggers a host of oppressive regulatory requirements "governing management, personnel, recordkeeping, counseling, testing, [and] equipment . . . ." (Am. Comp. ¶ 103.) In addition, implementing regulations require abortion facilities to adopt organizational bylaws, a quality improvement committee, and to submit to annual compliance inspection. (*Id.* ¶¶ 117–119.) Count II challenges the allegedly unjustified burden imposed by the licensing regulations, while Count III impugns the necessity for abortion providers to comply with certain hospital regulations as a condition of licensure. Plaintiffs argue that such rigid regulations lack any medical justification because abortion is "a safe outpatient procedure, with extremely low complication rates, that does not need to be performed in a sterile field." (*Id.* ¶ 114.) "[N]o incision is required, and general anesthesia is not used. . . . [It] entails only the oral administration of medications." (*Id.* ¶ 116.) Plaintiffs maintain that these licensing requirements are "far more burdensome than Virginia's regulations governing providers of comparable office-based outpatient care." (*Id.* ¶ 4(b).)

The Defendants aptly respond that "the constitutionality of Virginia's regulatory scheme for abortion providers thus depends on the implementing regulations, not the mere fact that abortion providers are defined by statute as hospitals." (Defs.' Mem. Supp. Mot. Dismiss 5.)

The core claim in Counts I and II, however, is the stringency of the regulations governing abortion providers and their effect on availability, not their arguable classification as a form of hospital. Plaintiffs have therefore pleaded a plausible claim of undue burden at this stage as to Counts I and II.

The statutory underpinning of Count III is Va. Code Ann. § 18.2-73. This code section provides:

> Notwithstanding any of the provisions of § 18.2-71 [providing penalty provisions for performing certain abortions] and in addition to the provisions of § 18.2-72 [allowing licensed physicians to perform abortions during the first trimester during pregnancy], it shall be lawful for any physician licensed by the Board of Medicine to practice medicine and surgery, to terminate or attempt to terminate a human pregnancy or aid or assist in the termination of a human pregnancy by performing an abortion or causing a miscarriage on any woman during the second trimester of pregnancy and prior to the third trimester of pregnancy *provided such procedure is performed in a hospital* licensed by the State Department of Health or operated by the Department of Behavioral Health and Developmental Services.

Va. Code Ann. § 18.2-73 (emphasis added).

Count III challenges the hospital requirement articulated in Va. Code Ann. § 18.2-73, as applied to second trimester abortions. Violations of this provision are prosecuted as a Class 4 felony. *See* Va. Code Ann. § 18.2-71. This provision requires that all second trimester procedures be performed in an inpatient hospital or outpatient surgical center. According to the Amended Complaint, administrative regulations require:

> Surgical Centers to have sterile operating rooms of at least 150 square feet or more, depending on sedation level provided; patient corridors at least five or six feet wide, depending on location; and similarly specific requirements regarding HVAC systems, finishes for ceilings, walls, and floors, and recovery room dimensions and layout, among others.[11]

(Am. Compl. ¶ 133.) Plaintiffs further maintain that "[n]o scientific evidence indicates that abortions, including second trimester abortions, performed in an inpatient hospital or

---

[11] According to Plaintiffs, surgical centers seeking licensure face the formidable hurdle of the Certificate of Public Need process. *See* 12 Va. Admin. Code § 5-220-20. Plaintiffs further point out that "[t]he application fee alone is up to $20,000, depending on the estimated cost of the project. 12 Va. Admin. Code § 5-220-180." (Am. Compl. ¶ 142.)

Surgical Center are safer than those performed in an appropriate medical office setting." (*Id.* ¶ 137.) They add that major medical associations "reject the notion that all second trimester abortions should be performed in hospitals or Surgical Centers." (*Id.* ¶ 138.) Plaintiffs argue that this regulatory scheme places an undue burden on the fundamental right to choose an abortion prior to viability because only two facilities in Virginia meet the regulatory requirements and readily provide second trimester abortion care in the same manner as inpatient hospitals or outpatient surgical hospitals. As a result of these regulations, there are only two outpatient surgical centers qualified to perform second trimester abortions in Virginia. (*Id.* ¶ 198.)

When viewed in the context of facility access, Plaintiffs' as-applied claims in Count III rise above the speculative level and adequately meet the facial plausibility standard articulated in *Twombly*. 550 U.S. at 555, 570. However, as Defendants perceptively point out, the Supreme Court has upheld surgical center requirements for second trimester abortions when facially challenged. *Simopoulos v. Va.*, 462 U.S. 506, 519 (1983). In *Simopoulos*, the Supreme Court definitively stated, "[w]e conclude that Virginia's requirement that second-trimester abortions be performed in licensed clinics is not an unreasonable means of furthering the State's compelling interest in 'protecting the woman's own health and safety.'" *Id.* (quoting *Roe*, 410 U.S. at 150). Therefore, to the extent that Count III is construed to be a facial challenge, it fails to pass Rule 12(b)(6) review.

In Count IV, Plaintiffs contend that the physician-only law, codified in § 18.2-72, has posed a needless and substantial obstacle to abortion access. They further maintain

16

that "medical advances and training since 1975 have rendered restrictions like the Physician-Only Law obsolete." (Pls.' Mem. Opp'n Mot. Dismiss 14.) They suggest that trained advanced practice clinicians are capable of providing safe and effective abortion care. Plaintiffs add that:

> There is no statistically significant benefit, as measured by complication rates, failure rates, or any other outcome, when aspiration abortions are performed by physicians as compared to APCs [Advanced Practice Clinicians]. Indeed, peer-reviewed studies uniformly conclude that APCs can safely and effectively provide both aspiration and medication abortion, and leading medical and public health authorities agree.

(Am. Compl. ¶ 165.)

Defendants respond, in essence, that this Court need not venture into an undue burden analysis with respect to physician-only laws. Highlighting two decisions from the Supreme Court, they maintain that the constitutionality of restricting the performance of abortions to licensed physicians is a settled issue. For support, Defendants draw the Court's attention to the Supreme Court's precedent in *Planned Parenthood of S.E. Pennsylvania, et al. v. Casey*, 505 U.S. 833 (1992) and *Mazurek v. Armstrong*, 520 U.S. 968 (1997).

Plaintiffs maintain that Defendants read the holding in *Mazurek* too broadly. Under Plaintiffs' interpretation, "*Mazurek* upheld a physician-only requirement where the question before the Court was whether the law imposed an undue burden because it had an improper *purpose*." (Pls.' Mem. Opp'n Mot. Dismiss 13) (emphasis in original). Acknowledging that the record demonstrated insufficient evidence of a substantial obstacle to abortion, the Supreme Court restated that "prior cases 'left no doubt that, to

ensure the safety of the abortion procedure, the States may mandate that only physicians perform abortions.'" *Mazurek*, 520 U.S. at 974–75 (quoting *City of Akron v. Akron Ctr. for Reproductive Health, Inc.*, 462 U.S. 416, 447 (1983)). The Court in *Mazurek* also pointed out that forty other states in the nation had similar laws restricting the performance of abortions to licensed physicians. 520 U.S. at 969. Of additional relevance to the immediate case, the Court in *Mazurek* noted that "the only extant study comparing the complication rates for first-trimester abortions performed by [physician-assistants] with those for first-trimester abortions performed by physicians found no significant difference." *Id.* at 973 (citation omitted).

But this line of argument is tempered somewhat by *Casey* itself. In the course of upholding the physician-only requirement at issue in that case, the Supreme Court emphasized that "[o]ur cases reflect the fact that the Constitution gives the States broad latitude to decide that particular functions may be performed only by licensed professionals, even if an objective assessment might suggest that those same tasks could be performed by others." *Casey*, 505 U.S. at 885 (citation omitted). However, as mentioned above, a significant issue bypassed in *Mazurek* was the possible effect of compelling evidence of a substantial obstacle to abortion posed by a physician-only requirement. *Mazurek*, 520 U.S. at 972.

The Supreme Court has consistently cautioned that states have significant latitude to enact regulations to further the health or safety of a woman seeking an abortion. However, as the Court noted in *Casey*, "[u]nnecessary health regulations that have the purpose or effect of presenting a substantial obstacle to a woman seeking an abortion

18

impose an undue burden on the right." 505 U.S. at 878. "An undue burden exists, and therefore a provision of law is invalid, if its purpose or effect is to place a substantial obstacle in the path of a woman seeking an abortion before the fetus attains viability." *Id.*

Therefore, in the context of an as-applied analysis, the door remains slightly ajar as to whether the physician-only law in Virginia places an undue burden on the fundamental right to choose an abortion prior to viability. Otherwise, from a facial perspective, the physician-only requirement rests on firm precedential terrain. Thus, Count IV survives Rule 12(b)(6) as-applied review and may proceed on that particular footing.

Count V, styled as "Two-Trip Mandatory Delay Law," focuses on Va. Code Ann. § 18.2-76. Under this statutory provision, women seeking an abortion "are forced to undergo a mandatory ultrasound and then delay their abortion at least 24 hours, unless they live at least 100 miles from the facility where the abortion is to be performed, in which case the delay is reduced to two hours." (Am. Compl. ¶ 208.) Plaintiffs maintain that the mandatory ultrasound, coupled with the 24-hour delay, is both medically unnecessary and imposes an undue burden on abortion access. (*Id.* ¶ 209.) In Plaintiffs' view, the ultrasound provisions required under § 18.2-76 are unnecessary to ascertain gestational age. (*Id.* ¶ 211.)

Additionally, Plaintiffs contend that Virginia's informed consent materials, mandated by statute, are both unnecessary and factually inaccurate. They also point out that physicians, such as Dr. Doe, are subject to civil fines, pursuant to § 18.2-76(G) for failure to provide this information to their patients. (*Id.* ¶ 227.) In reply, the Defendants

emphasize that simply because a procedure is medically unnecessary does not mean that it poses an undue burden. The Defendants argue that none of the procedures questioned in Count V rise to the level of a substantial obstacle to abortion access. Furthermore, the results of the ultrasound are necessary, in Defendants' view, to determine gestational age, which guides the physician in determining the appropriate procedure.[12]

The Court is mindful that states have significant latitude to enact regulations to further the health and safety of a woman seeking an abortion, provided they do not impose an undue burden on that right. The requirement that a woman seeking an abortion submit to an ultrasound to enable the physician to ascertain the developmental stage of the fetus, does not appear facially to pose an undue burden. Likewise, the receipt of informed consent information would not appear to pose a substantial obstacle. However, it is conceivable that some other procedures necessitated by § 18.2-76, in concert, could potentially do so, especially the 24-hour delay. That determination, however, raises factual issues beyond the boundaries of the Amended Complaint. At this stage, viewing all well-pleaded facts in the Plaintiffs' favor, Count V presents a plausible as-applied claim. Whether it presents a triable issue must await the development of a more complete factual record.

Viewed in the context of Plaintiffs' exhaustive Amended Complaint, Count VI – Substantive Due Process – Cumulative Burden, appears to articulate a theory of proof as opposed to a substantive claim. Essentially, it urges the Court to assess the collective

---

[12] Section 18.2-76(C) requires that the medical professional performing the fetal ultrasound verbally offer the woman an opportunity to view the ultrasound image and receive a printed copy, if desired.

burden imposed by the statutes and regulations at issue in the other counts in determining whether they pose a substantial obstacle to the fundamental right to choose abortion before viability. As the Defendants emphasized during oral argument, this type of freestanding, collective claim is unfamiliar to abortion jurisprudence.

Plaintiffs are, of course, free to argue the collective impact of the statutes and regulations at issue as they affect the burden imposed by each claim. They will not, however, be considered a separate claim for relief. Therefore, Plaintiffs' Count VI will be dismissed.

Count VII is a skeletally pleaded claim that "[t]he Hospital Requirement, in conjunction with the Criminalization Laws, is unconstitutionally vague and violates Plaintiffs' rights to due process as guaranteed by the Fourteenth Amendment to the U.S. Constitution because it fails to define the terms 'hospital' and 'second trimester of pregnancy.'" (*Id.* ¶ 266.) While even the Defendants agree that Virginia's abortion statutes need some refinement, and are not a model of clarity, they provide ample guidance as to what statutorily constitutes a hospital[13] and the "second trimester of pregnancy," a medical term of art. (Defs.' Mem. Supp. Mot. Dismiss 7.) Inevitably, the definition of these terms will be addressed during the course of this litigation, but Count VII, based on the present record, fails to state an actionable constitutional claim of vagueness warranting relief under the Due Process Clause of the Fourteenth Amendment.

Count VIII of the Amended Complaint alleges that Virginia's Licensing Regulations violate the Fourth Amendment by subjecting Plaintiffs to "biennial

---

[13] *See Simopoulos*, 402 U.S. at 512 n.4.

unannounced, warrantless inspections . . . ." (Am. Compl. ¶ 268.) The regulatory

provision in question, 12 Va. Admin. Code § 5-412-90, grants the Virginia Department of

Health's "duly designated employee[s]" a right of entry to abortion facilities for the

purpose of conducting inspections. 12 Va. Admin. Code § 5-412-90. "Such entries and

inspections shall be made with the permission of the owner or person in charge, unless an

inspection warrant is obtained after denial of entry from an appropriate circuit court." *Id.*

That section further states, "If the owner, or person in charge, refuses entry, this [refusal]

*shall be sufficient cause for immediate revocation or suspension of the license.*" *Id.*

(emphasis added). *See* 12 Va. Admin. Code § 5-412-130(A) ("When the department

determines that an abortion facility is (i) in violation . . . *of any applicable regulation . . .*

*the department may deny, suspend, or revoke the license to operate an abortion*

*facility . . . .*") (emphasis added). A license suspension shall be indefinite in duration,

until the commissioner "determines that the conditions upon which suspension was based

have been corrected and that the interests of the public will not be jeopardized by

resumption of operation." *Id.* at (C).

Plaintiffs argue that the possibility of license revocation or suspension is a

coercive measure that invalidates any consent to an inspection, thereby subjecting an

abortion facility's owner to a warrantless search. Defendants contend that the inspections

under the Licensing Regulations are constitutional because they are conducted pursuant

to an owner's consent or a valid warrant. However, either by omission or design,

Defendants' memoranda in support of their Motions to Dismiss fail to mention the

potential revocation or suspension that facility owners face if they withhold consent to an

inspection. Viewed in the light most favorable to Plaintiffs, Count VIII states a sufficiently plausible constitutional claim at this initial stage.

Based on the foregoing analysis, the Defendants' Motions to Dismiss will be granted in part and denied in part.

An appropriate Order will accompany this Memorandum Opinion.

/s/

Henry E. Hudson
Senior United States District Judge

Date: Sept. 26, 2018
Richmond, VA