**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

| | |
|---|---|
| **FALLS CHURCH MEDICAL CENTER, LLC,** ) | |
| d/b/a FALLS CHURCH HEALTHCARE CENTER, ) | |
| et al.; ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 3:18cv428-HEH |
| ) | |
| **M. NORMAN OLIVER,** Virginia Health ) | |
| Commissioner, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ON COUNTS I-IV and COUNTS VII -VIII
OF PLAINTIFFS' AMENDED COMPLAINT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... iv

INTRODUCTION ...............................................................................................1

STANDARD OF REVIEW AND APPLICABLE LEGAL STANDARD ....................1

STATEMENT OF UNDISPUTED MATERIAL FACTS ..........................................3

ARGUMENT ...................................................................................................7

A.    Defendants are Entitled to Summary Judgment on Plaintiffs' As-Applied Challenge to
      Virginia's Physician-Only Law. ..................................................................7

      1. Virginia Code § 18.2-72, as applied, imposes no substantial obstacle to abortion care. 8

      2. Virginia Code § 18.2-72, as applied, provides benefits to Virginia women...............11

      3. Because Plaintiffs cannot show that the alleged burdens substantially outweigh the
      benefits, Virginia Code § 18.2-72 is not unconstitutional as-applied to Plaintiffs............11

B.    Defendants Are Entitled to Summary Judgment on Plaintiffs' Vagueness Challenge to
      Virginia's Hospital Requirement.......................................................…...12

      1.    Virginia Code § 18.2-73 satisfies the Supreme Court's vagueness
      standard..........................................................................….....12

      2.    There is No Evidence That Plaintiffs Do Not Understand the Hospital
      Requirement.........................................................................….. 14

C.    The Undisputed Facts Show No Fourth Amendment Violation.............................15

      1. Plaintiffs Consent to Department Inspections.......................................…..16

      2. Plaintiffs Do Not Have Standing to Assert Their Patients' Fourth Amendment
      Rights...........................................................................……19

      3. Patients Consent to Observation of Procedures .........................….................19

D.    Plaintiffs lack standing to challenge Virginia Code § 18.2-73, but if this Court concludes
      otherwise, the Court must narrow Virginia Code § 18.2-73 to accord with the relevant
      Supreme Court precedent........................................................…...20

E.    Plaintiffs have not shown that Virginia Code § 32.1-127(B) imposes a substantial burden,
      and Defendants are Entitled to Summary Judgment.............................…...22

F.      Plaintiffs have not demonstrated that the individual regulations impose a substantial burden, and Defendants are Entitled to Summary Judgment on Count II………………………………………………………………………………...…..24

        1. The specific Licensing Regulations are severable from each other…………………....25

        2. Plaintiffs' Omnibus Challenge Has No Precedent……………………….…………25

        3. Plaintiffs make no effort to identify an individual regulation's "burden" …………...27

CONCLUSION..................................................................................................................29

CERTIFICATE................................................................................................................31

## TABLE OF AUTHORITIES

Anderson v. Liberty Lobby, Inc.
    477 U.S. 242 (1986)............................................................................................2
Ayotte v. Planned Parenthood of Northern New Eng.
    546 U.S. 320 (2006)..........................................................................................22
Boyles v. Roanoke
    19 S.E.2d 662 (Va. 1942) .................................................................................25
Celotex Corp. v. Catrett
    477 U.S. 317 (1986)............................................................................................1
Gonzales v. Carhart
    550 U.S. 124 (2007)..........................................................................................12
Greenville Women's Clinic v. Comm'r, S.C. Dep't of Health
    317 F.3d 357 (4th Cir. 2002) ...........................................................................12
Jackson Women's Health Org. v. Currier
    320 F. Supp. 3d 828 (S.D. Miss. 2018) ......................................................3, 23
June Med. Servs., L.L.C. v. Gee,
    905 F.3d 787 (5th Cir. 2018) .............................................................................3
Kyllo v. United States
    533 U.S. 27 (2001)............................................................................................19
Leavitt v. Jane L.
    518 U.S. 137 (1996)..........................................................................................25
Marshall v. N. Va. Transp. Auth.
    657 S.E.2d 71 (Va. 2008)..................................................................................25
Matsushita Elec. Indus. Co. v. Zenith Radio Corp.
    475 U.S. 574 (1986)............................................................................................2
Mazurek v. Armstrong
    520 U.S. 968 (1997)............................................................................................8
Melendez et al. v. Virginia Bd. of Health
    CL17001164-00 (Henrico Cty. Circuit Court) ....................................27, 28, 29
Planned Parenthood of Southeastern Pa. v. Casey
    505 U.S. 833 (1992 ................................................................................ passim
Planned Parenthood of Southeastern Ark. and East. Okla. v. Jegley
    864 F.3d 953 (8th Cir. 2017) .........................................................................3, 8
Rakas v. Illinois
    439 U.S. 128 (1978)..........................................................................................19
Schneckloth v. Bustamonte
    412 U.S. 218 (1973)..........................................................................................16

Simopoulos v. Virginia
    462 U.S. 506 (1983)..............................................................................13, 14, 20
Sons of Confederate Veterans v. Comm'r of Va. Dep't of Motor Vehicles
    288 F.3d 610 (4th Cir. 2002) ...........................................................................25
United States v. Lattimore
    87 F.3d 647 (4th Cir. 1996) .............................................................................16
Whole Woman's Health v. Hellerstedt,

136 S. Ct. 2292 (2016) ............................................................................... *passim*

## STATUTES, REGULATIONS, AND RULES

Va. Code Ann. § 18.2-71 .................................................................6, 13, 22
Va. Code Ann. § 18.2-72 .................................................................. *passim*
Va. Code Ann. § 18.2-73 .................................................................. *passim*
Va. Code Ann. § 18.2-76 ....................................................................27
Va. Code Ann. § 32.1-12 ....................................................................15
Va. Code Ann. § 32.1-25 ..................................................................16, 17
Va. Code Ann. § 32.1-123 ................................................................13, 21
Va. Code Ann. § 32.1-127 ................................................................. *passim*
Va. Sup. Ct. R. 1:1 ...............................................................................4
Va. Sup. Ct. R. 5:9 ...............................................................................4
12 Va. Admin. Code § 5-412-90 ......................................................16, 18
12 Va. Admin. Code § 5-412-130 .........................................................13
12 Va. Admin. Code § 5-412-230 ...................................................4, 13, 14
12 Va. Admin. Code § 5-412 ......................................................4, 24, 28, 29

**INTRODUCTION**

Discovery in this matter is closed, and the undisputed material facts before the Court demonstrate that Plaintiffs cannot establish that the statutes and regulations challenged in the Amended Complaint impose an unconstitutional substantial burden on the women of Virginia.  For the reasons explained herein, Defendants seek Summary Judgment on Count IV (as-applied challenge to Virginia's physician-only law); Count VII (vagueness challenge to Virginia's hospital requirement); and Count VIII (violation of Fourth Amendment).

With respect to Plaintiffs' as-applied challenge to Virginia's hospital requirement (Count III), Defendants reiterate that Plaintiffs lack standing to challenge Virginia Code § 18.2-73.  But, to the extent this Court disagrees, Defendants ask this Court to adopt a narrowing construction of Virginia Code § 18.2-73, which is necessary to conform the statute with existing Supreme Court precedent.  Alternatively, the Court should certify the question about whether Virginia Code § 18.2-73 can be narrowed to the Supreme Court of Virginia.

Lastly, as to Count I (undue burden challenge to Virginia's licensing statute), Defendants move this Court for entry of summary judgment in their favor because Plaintiffs have failed to articulate any burden imposed by the classifying statute (Virginia Code § 32.1-127(B)).  And because Plaintiffs have failed to specify individual burdens for each of the challenged regulations as required, Defendants seek summary judgment as to Count II as well.

**STANDARD OF REVIEW AND APPLICABLE LEGAL STANDARD**

Summary judgment is appropriately granted when there is no genuine issue as to any material fact and when, based upon facts not in dispute, the moving party is entitled to judgment as a matter of law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for

the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation omitted).

Because Plaintiffs allege that Virginia's statutes and regulations unconstitutionally interfere with a woman's right to obtain a pre-viability abortion, the undue burden test applies. The U.S. Supreme Court introduced the undue burden test in *Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833 (1992), which affirmed a woman's right to terminate a pregnancy prior to viability but also made clear that "states are free to enact laws to provide a reasonable framework for a woman to make a decision that has such profound and lasting meaning." 505 U.S. at 873 (plurality opinion). In *Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292 (2016), the Court adopted the plurality's view in *Casey* that "a statute which, while furthering [a] valid state interest, has the effect of placing a substantial obstacle in the path of a woman's choice cannot be considered a permissible means of serving its legitimate ends." 136 S. Ct. at 2309 (quoting *Casey*, 505 U.S. at 877). *Hellerstedt* thus confirms that a reviewing court must consider both the benefits and the burdens of a challenged law in deciding whether it constitutes a substantial obstacle to choosing a pre-viability abortion. *Id.*

Neither *Casey* nor *Hellerstedt* stands for the proposition that any burden on the right to choose a pre-viability abortion creates a substantial obstacle. "The fact that a law which serves a valid purpose. . . has the incidental effect of making it more difficult or more expensive to procure an abortion cannot be enough to invalidate it." *Casey*, 505 U.S. at 874. Moreover, the fact that a particular law or regulation may have minimal benefit does not require invalidation of the restriction. As courts applying the undue burden test since *Hellerstedt* have noted, "the facts in

2

*Hellerstedt* were so lopsided that the Court was never forced to explain how the test operates at the margins. . . . It seems that the *Hellerstedt* Court would not have delved so deeply into the burdens if the mere lack of benefits renders a law unconstitutional." *Jackson Women's Health Org. v. Currier*, 320 F. Supp. 3d 828, 842 n.9 (S.D. Miss. 2018). While the Fourth Circuit has yet to explain how *Hellerstedt* applies "at the margins," other federal courts of appeals have considered the issue. In *Planned Parenthood of Southeastern Ark. And East. Okla. v. Jegley*, the Eighth Circuit considered the question to be "whether the [challenged requirement's] benefits are *substantially outweighed* by the burdens it imposes." 864 F.3d 953, 960 n.9 (8th Cir. 2017) (emphasis added). And the Fifth Circuit likewise has framed the undue burden test articulated in *Casey* and *Hellerstedt* as "not a 'pure' balancing test under which *any* burden, no matter how slight, invalidates the law. Instead, the burden must still be substantial. . . . A minimal burden even on a large fraction of women does not undermine the right to abortion." *June Med. Servs., L.L.C. v. Gee*, 905 F.3d 787, 803 (5th Cir. 2018). This Court should adopt the approach of the Fifth and Eighth Circuits and find that a statute or regulation places an unconstitutional obstacle in the path of a woman seeking a pre-viability abortion only if the law's articulated benefits are substantially outweighed by the alleged burdens it imposes.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

Virginia's Requirements

- Virginia facilities performing five or more first trimester abortions per month must be licensed by the Virginia Department of Health ("VDH"). Va. Code Ann. § 32.1-127(B)(1); Am. Compl. ¶ 67.

- Virginia law requires that second trimester abortions be performed in facilities licensed as hospitals. Va. Code Ann. § 18.2-73; Am. Compl. ¶ 72.

- First trimester abortion facilities ("FTAFs") such as Plaintiffs may perform abortions on patients measuring up to thirteen weeks and six days after last menstrual period ("LMP")

3

or based upon an appropriate clinical estimate by a licensed health care provider.  12 Va. Admin. Code § 5-412-230(A); Am. Compl., ECF No. 41, ¶ 43.

- Abortions beyond 13 weeks and 6 days gestation must be performed in a hospital licensed by the State Department of Health or operated by the Department of Behavioral Health and Developmental Services. Va. Code Ann. § 18.2-73; Am. Compl. ¶ 130. In addition to outpatient surgical hospitals like VLPP's Virginia Beach facility, there are over 100 licensed hospitals in the Commonwealth in which abortions can be legally performed. **Exhibit 1**, McElwain Dep. 216-17 (stating that second trimester abortions can be performed at any licensed hospital in Virginia).

- Plaintiffs here bring an omnibus challenge to Virginia's regulation of FTAFs and decline to identify specific regulations they believe to be individually unconstitutional. Am. Compl. ¶ 70.

- On February 21, 2019, Judge John Marshall in the Henrico Circuit Court ruled that the Board of Health had exceeded its authority in promulgating thirteen regulations amended in 2017 and suspended those thirteen amendments, but held that seven of the regulations amended in 2017 were amended lawfully.  The Henrico Circuit Court retains jurisdiction over its final order, which can be modified, vacated, or suspended, until March 14, 2019, and either party may appeal until March 25, 2019.  *See* Va. Sup. Ct. R. 1:1; 5:9.

- A Notice of Intended Regulatory Action was submitted on July 25, 2018, and the public comment period on the Notice has ended as of October 31, 2018.  The Board of Health is expected to draft proposed language for amendments to the regulations in 12 Va. Admin. Code § 5-412 for its upcoming June, 2019 meeting.  **Exhibit 2**, DEFENDANTS00148166-69.

<u>Plaintiff Facilities</u>

- Plaintiff Falls Church Medical Center, LLC ("Falls Church") currently employs four medical doctors who perform medication and aspiration abortions at its facility.  **Exhibit 3**, C.T. Dep. 42:12-21.

- Falls Church has no difficulty finding physicians to provide abortions—in fact, physicians often seek out the facility to offer their services.  **Exhibit 4**, Codding Dep. 41:15-42:1.

- Women do not have to wait for abortion appointments at Falls Church. The facility  aims to have each woman who calls for an abortion appointment seen within seventy-two hours of her initial contact with the facility.  Ex. 4, Codding Dep. 95:22-96:5.

- Falls Church does not currently employ any "advance practice clinicians" ready to provide abortion care should Virginia's physician-only requirement be found to be unconstitutional.  Ex. 3, C.T. Dep. 54:2-5.

- Plaintiff WWH-Charlottesville currently employs one physician—Dr. Doe—to provide all its medication and surgical abortions.  Dr. Doe works part-time at the Charlottesville clinic. **Exhibit 5**, Miller Dep. 15:7-9

- Like Falls Church, WWH's Charlottesville facility currently has no wait list for abortion appointments  Ex. 5, Miller Dep. 50:9-11.

- Indeed, WWH-Charlottesville has sufficient capacity at its facility to offer "VIP Abortions" (in which the clinic opens for a single, "very important" abortion patient) (Ex. 5, Miller Dep. 80:22 – 83:11) and "Fast Track Abortions" (in which the patient pays a premium to be the next patient seen and move through the facility as quickly as possible). Ex. 5, Miller Dep. 85:12 – 86:21.

- Like Falls Church, WWH-Charlottesville employs no nurse practitioners, licensed practical nurses, certified nurse midwives, or physician assistants.  Ex. 5, Miller Dep. 20:18-20, 22:6-10.

- Plaintiff VLPP testified that it currently provides abortion care to approximately 3,000 patients in the Richmond area. Ex. 1, McElwain Dep. 100:9-10.

- Additionally, VLPP provides family medicine services to approximately 10,000 patients in the Richmond area.  Ex. 1, McElwain Dep. 100:9-10.

- The breakdown of family medicine to abortion care at VLPP's Virginia Beach facility is similar to that of Richmond; *i.e.*, fewer than one in four VLPP patients presents for abortion care.  Ex. 1, McElwain Dep. 100:18.

- In Hampton, fewer than one out of every ten VLPP patients presents for family medicine care.  Ex. 1, McElwain Dep. 100:11-15 .

- VLPP provides services to its many family medicine patients via seven nurse practitioners, two registered nurses, and up to ten licensed practical nurses.  Ex. 1, McElwain Dep. 37:2-38:15; 39:16- 40:17.

- VLPP currently employs no physician assistants.  Ex. 1, McElwain Dep. 40:18-20.

- In Richmond, VLPP's two physicians offer medication abortions five days a week and first trimester surgical abortions up to two and a half days a week.  Ex. 1, McElwain Dep. 24:3-11; 24:16-20.

- Second trimester surgical abortions are offered by two VLPP physicians on Fridays at VCU Hospital.  Ex. 1, McElwain Dep. 33:12-19; **Exhibit 6**, Ramesh Dep. 54:16-19; 61:20-62:1.

- VLPP's two Virginia Beach physicians offer medication abortions Monday through Friday (Ex. 1, McElwain Dep. 27:3-13);  first trimester surgical abortions on Tuesdays and Fridays

(McElwain Dep. 27:14-15, 19-20); and second trimester surgical abortions at VLPP's on-site operating room on Tuesdays and Fridays (McElwain Dep. 28:7-14).

- Notably, VLPP is planning to open a brand new facility in Richmond's East End in early 2020. Ex. 1, McElwain Dep. 196:8-16.

- This new facility will more than double the total number of exam and procedure rooms VLPP has available in Richmond. Ex. 1, McElwain Dep. 74:10-13; 197:21-198:3.

- Each Plaintiff in this case—with the exception of Dr. Doe—is classified as a "hospital" under Virginia Code § 32.1-127; Am. Compl. ¶¶ 19-22; Ex. 4, Codding Dep. 20 (acknowledging that private practices that provide abortion care are regulated as a hospital).

- No Plaintiff clinic is subject to criminal liability under Virginia Code § 18.2-71—and the undisputed facts demonstrate that no clinic has been criminally prosecuted under the statute. **Exhibit 7**, Plfs.' Resp. to Interrogs. No. 12, dated November 28, 2018.

- Throughout this case, Plaintiffs have refused to articulate an individual, specific burden imposed by an individual, specific regulation. **Exhibit 8**, Plfs.' Resp. to Defs.' First Req. for Admis. dated Jan. 14, 2019. Instead, Plaintiffs rely on general burdens imposed by the Regulatory Scheme as a whole. *Id.*

- Defendants, recognizing this fact, articulated a specific state interest advanced by each regulation in response to Plaintiffs' discovery requests. **Exhibit 9**, Defs.' Objections and Answers to Plfs.' First Set of Interrogs. dated Nov. 28, 2018.

VDH Inspections

- Upon entry to a facility, the Department's inspectors (1) identity themselves to facility staff as representatives of the Department's Office of Licensing and Certification; (2) provide their credentials to the facility for verification; and (3) ask to speak to the administrator in charge. **Exhibit 10**, Marion Dep. 65:6-10, 67:18-68:1; **Exhibit 11**, Middlebrooks Dep. 147:10-11; 170:10-19; **Exhibit 12**, Bodin Dep. 266:19-267:1.

- Falls Church has conducted staff trainings to prepare its employees for the Department inspections and ensure the process goes smoothly upon the arrival of the health inspectors. Ex. 4, Codding Dep. 224:9-15.

- The purpose of the inspection training was to show staff "how to welcome [inspectors] and how to create a good attitude in the center, and for the staff to see, for me to elaborate, even though I'm doing it mainly for the staff, to feel positive, any benefit that they might get from [the inspection]." Ex. 4, Codding Dep. 226:9-14.

- When VLPP's understanding of the regulations differed from an inspector's, VLPP staff did not hesitate to instruct the inspectors that they would be required to wait for an

administrator to arrive before the state inspection could begin.  Ex. 1, McElwain Dep. 123:19-124:3.

- Once so advised, the inspectors complied with VLPP's request.  *See* Ex. 1 McElwain Dep. 123:19-124:6.

- Providers and staff are familiar with the inspection regulations and their ability to consent to (or withhold consent for) an inspection.  *See* Ex. 4, Codding Dep. 51:7-11; Ex. 1, McElwain Dep. 123:19-124:6; Ex. 5, Miller Dep. 97:14-98:1.

- Although Plaintiffs argue that their consent cannot be considered voluntarily given, because such consent is obtained under "threat" of license suspension,  Pls' Mem. Opp. Dfs.' Mot. to Dismiss at 28-29,  not one Plaintiff testified that her facility only consented to the Department's inspection due to fear of license revocation.

- Plaintiffs fail to provide even a single example of a facility's license being impacted because a facility refused to allow inspectors to enter.

- Observation of patient care is an integral part of any facility inspection or survey.  Indeed, each of the Plaintiffs is subject to inspections conducted by trade associations or national organizations.  Ex. 4, Codding Dep. 110:8-111:9; Ex. 1, McElwain Dep. 106:12-107:22; Ex. 5, Miller Dep. 104:20-105:10.

- Plaintiffs testified that as part of these inspections or surveys, representatives from the National Abortion Federation and/or Planned Parenthood Federation of America routinely seek permission from patients to observe procedures.  Ex. 4, Codding Dep. 111:10-11; Ex. 1, McElwain Dep. 109:19-20.

- Likewise, the VDH inspectors seek to observe patient care during biennial licensing inspections.  Ex. 11, Middlebrooks Dep. 159:2-17; Ex. 4, Codding Dep. 66:14-16; Ex. 1, McElwain Dep. 142:1-5; Ex. 5, Miller Dep. 119:6.

- In every case, the health inspector secures written permission from the patient.  Ex. 1, McElwain Dep. 145:19-22; Ex. 11, Middlebrooks Dep. 159:2-17; *see* Ex. 4, Codding Dep. 69:9-17; Ex. 3, C.T. Dep. 130:3-6.

- There is no evidence before the Court that any patient's care has been observed without first obtaining that patient's written consent.

## ARGUMENT

**A.**   **Defendants are Entitled to Summary Judgment on Plaintiffs' As-Applied Challenge to Virginia's Physician-Only Law**

Plaintiffs' challenge to Virginia Code § 18.2-72—the statute limiting the performance of the abortion procedure to physicians—comes before the Court in the form of an as-applied challenge.  As this Court recognized in its Memorandum Opinion, "from a facial perspective, the physician-only requirement rests on firm precedential terrain."  Mem. Op. at 19, ECF No. 52. Indeed, the Supreme Court consistently has upheld physician-only laws.  *See Casey*, 505 U.S. at 885 ("Our cases reflect the fact that the Constitution gives the States broad latitude to decide that particular functions may be performed only by licensed professionals[.]"); *Mazurek v. Armstrong*, 520 U.S. 968, 974 (1997) (citing cases).  Because States have significant latitude to determine which licensed professionals may provide certain procedures within their boundaries, Plaintiffs here must demonstrate that Virginia's statute, as applied to them, has the purpose or effect of placing a substantial obstacle in the path of Virginia women seeking pre-viability abortions. *Hellerstedt*, 136 S. Ct. at  2309; *Casey*, 505 U.S. at 877. This is true <u>even if</u> the statute's benefit is only slight.  *Planned Parenthood of Southeastern Ark. and East. Okla. v. Jegley*, 864 F.3d 953 (8th Cir. 2017).  After months of discovery, Plaintiffs can produce no such evidence.  Count IV thus fails as a matter of law.

    1.    <u>Virginia Code § 18.2-72, as applied, imposes no substantial obstacle to abortion care.</u>

The undisputed facts demonstrate that Virginia's physician-only requirement imposes no impediment to the abortion care provided by Plaintiffs.  Rather, the facts show that Virginia women seeking pre-viability abortions are easily and ably served by the licensed physicians providing the service.

Plaintiff Falls Church testified that the facility has no difficulty finding physicians to provide abortions—in fact, physicians often seek out the facility to offer their services.  Codding Dep. 41:15-42:1.  Falls Church currently employs four medical doctors who perform medication

and aspiration abortions at its facility and one physician anesthetist.  C.T. Dep. 42:12-21.  There is no wait list for abortion appointments.  Codding Dep. 95:16-18.  In fact, Falls Church aims to have each woman who calls for an abortion appointment seen within 72 hours of her initial contact with the facility.  Codding Dep. 95:22-96:5.  Notably, Falls Church currently does not employ any "advance practice clinicians" ready to provide abortion care should Virginia Code § 18.2-72 be struck.[1]  C.T. Dep. 54:2-5.  Any ability of Falls Church to recruit, hire, and train such advance practice clinicians to provide first trimester abortion services is purely speculative.

Plaintiff WWH-Charlottesville currently employs one physician—Dr. Doe—to provide all medication and surgical abortions.  Miller Dep. 15:7-9.  Dr. Doe works part-time at WWH-Charlottesville.  *Id*.  Like Falls Church, the Charlottesville facility currently has no wait list for abortion appointments.  Miller Dep. 50: 9-11.  Indeed, WWH-Charlottesville has sufficient capacity at its facility to offer "VIP Abortions" (in which the clinic opens for a single, "very important" abortion patient) (Miller Dep. 81:1-83:11) and "Fast Track Abortions" (in which the patient pays a premium to be the next patient seen and move through the facility as quickly as possible).  Miller Dep. 85:12-86:21.  Like Falls Church, WWH-Charlottesville employs no nurse practitioners, licensed practical nurses, certified nurse midwives, or physician assistants—rendering its ability to recruit, hire, and train advance practice clinicians to provide first trimester abortions purely speculative.

The situation at Plaintiff VLPP is somewhat different.  VLPP testified that it currently provides abortion care to approximately 3,000 patients in the Richmond area.  By contrast, VLPP provides family medicine services to approximately 10,000 patients in the Richmond area.

---

[1] Indeed, Falls Church testified that it employs five physicians, one registered nurse, and several medical assistants—but not a single Nurse Practitioner, Certified Nurse Midwife, or Physician Assistant.

9

McElwain Dep. 99:19 – 100:10.  The breakdown of family medicine to abortion care at VLPP's Virginia Beach facility is similar to that of Richmond; *i.e*., more than three out of four VLPP patients presents for family medicine services, not abortion care.  McElwain Dep. 100:18-18.  In Hampton, nearly 9.5 out of every 10 VLPP patients presents for family medicine care. McElwain Dep. 100:11-15.  VLPP provides services to its many family medicine patients via seven nurse practitioners (McElwain Dep. 37:2-38:15), two registered nurses, and up to ten licensed practical nurses.  McElwain Dep. 39:16-40:17.  VLPP currently employs no physician assistants.  McElwain Dep. 40:18-20.  This allocation of clinical staff allows VLPP's four physicians to devote most of their time to performing first and second trimester abortions.   In Richmond, VLPP's two physicians offer medication abortions five days a week (McElwain Dep. 24:3-4, 8-11) and first trimester surgical abortions up to two and a half days a week.  McElwain Dep. 24:16-20.  Second trimester surgical abortions are offered by two VLPP physicians on Fridays at VCU Hospital. McElwain Dep. 33:12-19; Ramesh Dep. 44; 61-65.  VLPP's two Virginia Beach physicians offer medication abortions on Monday through Friday (McElwain Dep.  27:3-13);  first trimester surgical abortions on Tuesdays and Fridays (McElwain Dep. 27:14-15, 19-20); and second trimester surgical abortions at VLPP's on-site operating room on Tuesdays and Fridays (McElwain Dep. 28:7-14).  Notably, VLPP is planning to open a brand new facility in Richmond's East End in early 2020.  McElwain Dep. 196:8-16.  The primary purpose of the new center is to provide family medicine services to newly-eligible Medicaid patients (although VLPP expects to offer abortion care as well).  McElwain Dep. 196:8-16.  This new facility will more than double the total number of exam and procedure rooms VLPP has available in Richmond. McElwain Dep. 74:10-13; 197:21-198:3.

The undisputed facts demonstrate that Virginia women are promptly and ably served by the Virginia physicians providing abortion care. Stated differently, Plaintiffs have offered no evidence that Virginia Code § 18.2-72 places a substantial obstacle in the path of a woman seeking a pre-viability abortion.

      2.      <u>Virginia Code § 18.2-72, as applied, provides benefits to Virginia women</u>.

By contrast, Defendants have offered undisputed evidence that the physician-only requirement provides benefits to Virginia women. Dr. Lunsford testified that a significant benefit to limiting the provision of abortions to physicians is physicians' experience managing potential complications—competency gained as a result of residency and fellowship training. **Exhibit 13**, Lunsford Dep. 310:19-311:7. Specifically, Dr. Lunsford stated that while there is "no medical reason why [APCs] couldn't be trained to provide medical abortion[,] . . . managing the complications is another story[.] [I]t takes a volume of patients in order . . . to know how to handle the complications." *Id*. Because APCs lack the benefit of intensive residency training, they "probably haven't seen the volume of patients and the breadth of complications to know what to do with patients when there is a complication." Lunsford Dep. 310:19-311:7; s*ee also* **Exhibit 14,** Expert Report of Elizabeth Lunsford, M.D. at ¶¶ 38-39; Ex. 9, Defs.' Objections and Answers to Pls.' First Set of Interrogs. at 7.

      3.      <u>Because Plaintiffs cannot show that the alleged burdens substantially outweigh the benefits, Virginia Code § 18.2-72 is not unconstitutional as-applied to Plaintiffs</u>.

When the benefits and alleged burdens of Virginia Code § 18.2-72 are considered together, it is clear as a matter of law that the physician-only requirement does not create a substantial obstacle for Virginia women seeking pre-viability abortions. Although Plaintiffs promised this Court evidence of "Virginia-specific women" burdened by Virginia's physician-only law, (Sept. 6, 2018 Hr'g Tr. at 26-27), no such evidence is present in the record. Indeed, Plaintiffs have failed

11

to identify a single Virginia woman who claims her constitutionally-protected interest in obtaining a pre-viability abortion has been affected—in any way—by Virginia Code § 18.2-72. Put simply, Plaintiffs' as-applied claim fails—this Court should enter summary judgment on Count IV in favor of Defendants.

**B.      Defendants Are Entitled to Summary Judgment on Plaintiffs' Vagueness Challenge to Virginia's Hospital Requirement.**

Count VII of the Amended Complaint challenges Virginia Code § 18.2-73 (the "Hospital Requirement") because it fails to define the terms "hospital" and "second trimester of pregnancy." Am. Compl. ¶ 266. The Hospital Requirement makes it lawful for a licensed physician to perform a second trimester abortion provided the procedure is performed in a licensed hospital. Previously, this Court noted that "Count VII, based on the present record, fails to state an actionable constitutional claim of vagueness warranting relief." Mem. Op. at 21, ECF No. 52. Plaintiffs have not developed a record that warrants reconsideration of this Court's initial determination.

1.      Virginia Code § 18.2-73 satisfies the Supreme Court's vagueness standard.

The Supreme Court has stated that the "void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Gonzales v. Carhart*, 550 U.S. 124, 148-49 (2007). Moreover, "a regulation is not void for vagueness unless it is so unclear with regard to what conduct is prohibited that it may trap the innocent by not providing fair warning, or it is so standard-less that it enables arbitrary and discriminatory enforcement." *Greenville Women's Clinic v. Comm'r, S.C. Dep't of Health*, 317 F.3d 357, 366 (4th Cir. 2002). To succeed in their vagueness challenge, Plaintiffs must demonstrate that ordinary people cannot understand what conduct is prohibited by the Hospital

Requirement.  As discussed below, there is no evidence before this Court to demonstrate that any Plaintiff is confused about what conduct is prohibited by Virginia Code § 18.2-73.

Nor is the case law unclear.  The Supreme Court has noted that a "hospital" in Virginia under the Hospital Requirement refers to the statutory definition in Title 32.1 of the Virginia Code. *Simopoulos v. Virginia*, 462 U.S. 506, 512 n.4 (1983).  The Virginia Code defines a "hospital" as "any facility . . . in which the primary function is the provision of diagnosis, of treatment, and of medical and nursing services, surgical or nonsurgical, for two or more nonrelated individuals." Va. Code Ann. § 32.1-123.

In arguing that the Hospital Requirement is vague, Plaintiffs conflate the requirements of Virginia Code § 18.2-72 with the regulatory limitations of the Licensing Regulations.  First-trimester abortion facilities are hospitals under the Hospital Requirement statute, but are limited by the regulations to first-trimester abortion services.  *See* 12 VAC 5-412-230.  The penalties for violating the statute (criminal prosecution) are separate and distinct from the penalty for violating the regulations (potential loss of license).  *Compare* Va. Code Ann. § 18.2-71 *with* 12 VAC 5-412-130.  This comports with the Supreme Court's reasoning in *Simopoulos v. Virginia*, in which the Court upheld the Hospital Requirement while interpreting the statute to only allow second trimester abortions in general hospitals and outpatient surgical hospitals.  *Simopoulos*, 462 U.S. at 516 ("[T]he Virginia statutes and regulations do not require that second-trimester abortions be performed exclusively in full-service hospitals. Under Virginia's hospitalization requirement, outpatient surgical hospitals may qualify for licensing as 'hospitals' in which second-trimester abortions lawfully may be performed.").  The Supreme Court's interpretation has not become unconstitutionally vague due to the promulgation of a related, but not coterminous, regulation.

As this Court noted, "second trimester" is a medical term of art that also gives adequate notice such that ordinary people can understand what conduct is prohibited. Mem. Op. at 21, ECF No. 52. In addition, the first trimester is defined in the Licensing Regulations as "13 weeks and 6 days after last menstrual period or based on an appropriate clinical estimate by a licensed health care provider." 12 VAC 5-412-230(A). An ordinary person will be on notice that the second trimester begins at week 14 after LMP and continues for 13 weeks and 6 days thereafter, or that their estimate of the second trimester should be based on an appropriate clinical estimate by a licensed health care provider.

Finally, there has been no arbitrary or discriminatory enforcement of the Hospital Requirement. The law has been in place for 44 years, yet Plaintiffs have identified only four instances where an illegal abortion was prosecuted at all, and only one of those cases related to the failure to perform an abortion in a hospital – the underlying case that gave rise to *Simopolous*. Pl. Resp. Def. First Interrog. 30. One indictment in 44 years of enforcement is neither arbitrary nor discriminatory enforcement of the Hospital Requirement.

> ## 2. There is No Evidence That Plaintiffs Do Not Understand the Hospital Requirement.

An ordinary person can understand what conduct is prohibited by the Hospital Requirement – abortion outside of a licensed hospital. Notably, there is no evidence that Plaintiffs misunderstand this requirement. McElwain Dep. 216:22-217:4 (second trimester abortions "can legally be performed at any licensed hospital in Virginia"); Codding Dep. 26:22-27:3 (noting that when Falls Church Medical Center first opened it did not provide second trimester abortions because "[i]n Virginia that's been the code forever"); Miller Dep.129:12-14 (noting that second trimester abortions past 13.6 weeks could not be performed at Whole Woman's Health "because of the regulations"). Nor is there any proof in the record that there has been arbitrary or

discriminatory enforcement of the Hospital Requirement.  As a result, because "hospital" and "second trimester" can be plainly understood with reference to the Virginia Code and Virginia Administrative Code, the Hospital Requirement is not void for vagueness, and this Court should grant Summary Judgment in favor of the Defendants on Count VII.

## C.    The Undisputed Facts Show No Fourth Amendment Violation

Count VIII of Plaintiffs' Amended Complaint alleges that the Licensing Regulations violate Plaintiffs' and their patients' right to be free from unreasonable searches under the Fourth Amendment to the United States Constitution.   Plaintiffs base their Fourth Amendment claim on the fact that Virginia's regulations allow inspectors from VDH's Office of Licensing and Certification to enter the facilities and conduct inspections to ensure compliance with Virginia law and the requirements of the facilities' Department-issued licenses.  Plaintiffs also complain on behalf of their patients that patient medical records are subject to inspection by VDH personnel upon request.  Am. Compl. ¶ 69.

Plaintiffs' claim fails as a matter of law.  First, the undisputed facts before the Court demonstrate that Plaintiffs must (and in practice, do) consent to the entry of VDH inspectors prior to entry—and in some cases proactively facilitate the Department's inspections by providing designated office space in the clinic for inspectors' use during the inspection, assigning a clinic liaison to assist inspectors with any inquiries, and making arrangements for all available staff to be present for the inspectors' de-briefing after the inspection is complete.  Second, as to the inspection of patient records, Plaintiffs have no standing to assert a Fourth Amendment claim on their patients' behalf.  And even if Plaintiffs could vindicate the Fourth Amendment rights of third parties, this claim would fail because Plaintiffs have put forth no evidence of patient care observed in the absence of the relevant patients' affirmative consent. This Court should grant summary

judgment to Defendants on Count VIII and dismiss Plaintiffs' Fourth Amendment claim as a matter of law.

     1.     <u>Plaintiffs Consent to Department Inspections.</u>

"The Fourth Amendment prohibits unreasonable searches, and searches conducted without a warrant are per se unreasonable unless a valid exception to the warrant requirement is applicable. Voluntary consent to a search is such an exception." *United States v. Lattimore*, 87 F.3d 647, 650 (4th Cir. 1996) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)). The undisputed facts before the Court establish four occasions on which Department inspectors may enter FTAFs: (1) the initial, announced licensing inspection, which facilities schedule with the Department; (2) unannounced biennial inspections of licensees conducted pursuant to 12 Va. Admin. Code § 5-412-90; (3) re-visits based on the scope and severity of facility deficiencies noted by VDH personnel during licensing inspections; and (4) complaint investigations based on documented complaints received by the VDH complaint division. Bodin Dep. 214:2-19; 266:1-18; 306:3-9; 342:17-21.

The Virginia statute and the Virginia regulation are clear that entry by department inspectors can only be made with the consent of the facility's owner or operator. Virginia's Administrative Code provides that any VDH inspector "shall properly identify himself as an inspector designated by OLC" prior to entry and that "the abortion facility may verify the identity of the inspector prior to his admission." 12 Va. Admin. Code § 5-412-9. The Code then goes on to clarify that "[s]uch entries and inspections shall be made with the permission of the owner or person in charge, unless an inspection warrant is obtained after denial of entry from an appropriate circuit court." *Id.* Virginia Code § 32.1-25 likewise provides that "[u]pon presentation of appropriate credentials ***and upon consent of the owner or custodian***, the Commissioner or his

designee shall have the right to enter at any reasonable time onto any property to inspect, investigate, evaluate, conduct tests or take samples for testing as he reasonably deems necessary in order to determine compliance. . . . If the Commissioner or his designee is denied entry, he may apply to an appropriate circuit court for an inspection warrant."   Va. Code. Ann. § 32.1-25 (emphasis added).   In short, the Code gives the inspectors the right to enter under two circumstances:  with Plaintiff consent or with a warrant.

Moreover, the record before the Court demonstrates that in practice, the Department's inspectors follow these regulations and identity themselves to facility staff, provide their credentials for verification; and ask to speak to the administrator in charge.  Marion Dep. 65:6-10, 67:18-68:1; Middlebrooks Dep. 145:1-2,147:10-11; Bodin Dep. 266:19-267:1.  And the Plaintiff facilities respond by granting their consent for admittance.

In fact, rather than demonstrate a Fourth Amendment violation, the undisputed facts of this case show that Plaintiffs not only consent to the licensing inspections conducted by the Department, but often actively facilitate their completion.  For instance, Amy Hagstom Miller, corporate representative for Plaintiff Whole Women's Health Charlottesville, testified as follows regarding the reception of inspectors from VDH:

> Q:    Okay. So at your clinic, who meets with the health inspectors when they first arrive?
> A:    Well, the first person who would meet them would be whoever is at the front desk, and it's our sort of policy to make sure we check their ID, make sure they are who they say they are, just so we don't expose private health information to somebody we don't know who they are.  Then they would be welcomed into the facility and then we'd really talk about what they need to see and how best to accommodate that and not compromise patient experience of her medical procedure.

Miller Dep. 118:13-119:2.

17

**PARAGRAPH REDACTED AS CONFIDENTIAL**
**SEE EXHIBIT 15**

Ms. McElwain, corporate representative for Plaintiff VLPP, testified that her staff regularly instructs inspectors that they must wait for the facility administrator to arrive before the inspection can begin based on VLPP corporate policy and Ms. McElwain's understanding of the Virginia regulations.  McElwain Dep. 124:21 -127:14.  Ms. McElwain's testimony reveals that the VLPP staff did not hesitate to instruct the inspectors that they would be required to wait for an administrator to arrive before the state inspection could begin.   McElwain Dep. 123:19-124:3.  And once so advised, the inspectors complied with VLPP's request.  *See* McElwain Dep. 123:19-124:6.

The record demonstrates that Plaintiff providers and their staff are familiar with the inspection regulations and their ability to consent to (or withhold consent for) an inspection.  *See* Codding Dep. 51:7-11; McElwain Dep. 123:19-124:6; Miller Dep. 97:14-98:1  Nor is a single Plaintiff unfamiliar with the regulations and what they require.  (Ms. McElwain stated that VLPP staff often instructs inspectors on the finer points of the regulations. McElwain Dep. 123:19-124:1.)  The totality of circumstances demonstrate that as a matter of law, each Plaintiff consents to inspection by the VDH.

Plaintiffs counter that their consent cannot be considered voluntarily given, because such consent is obtained under "threat" of license suspension;  Pls' Mem. Opp. Dfs.' M. to Dismiss 28-29; *see also* 12 Va. Admin. Code § 5-412-90 ("If the owner, or person in charge, refuses entry, this shall be sufficient cause for immediate revocation or suspension of the license.").  However, there is no record evidence suggesting that any of the Plaintiff facilities only consented to the Department's inspection due to fear of license revocation.  What's more, Plaintiffs fail to provide

even a single example of a facility's license being impacted because a facility refused to allow inspectors to enter.   And the regulatory language cannot support Plaintiffs' allegation that withholding consent results in immediate suspension of a facility's license.   The plain language of the regulation states that refusal of entry constitutes "*sufficient cause* for immediate revocation or suspension of the license"—but nothing in the regulation or authorizing statute suggests that revocation or suspension is an immediate or inevitable consequence.   12 Va. Admin. Code § 5-412-90.   The undisputed facts show that Plaintiffs do not have a scintilla of evidence that refusal of consent triggers license revocation or that their consent to VDH inspections was motivated by this concern.   Without any record support for these allegations, this Court should dismiss the Plaintiff providers' Fourth Amendment claim as a matter of law.

> 2.    Plaintiffs Do Not Have Standing to Assert Their Patients' Fourth Amendment Rights.

A "Fourth Amendment search occurs when the government violates a subjective expectation of privacy that society recognizes as reasonable."  *Kyllo v. United States*, 533 U.S. 27, 33 (2001).  Plaintiffs here appear to assert a Fourth Amendment claim on behalf of their patients.  However, "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted."  *Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978) (citations omitted).  Moreover, even if the Plaintiffs somehow have standing to assert their patients' Fourth Amendment rights (and this is by no means certain), Plaintiffs have no evidence of any search without patient consent.  Given that consent, there can be no violation of the Fourth Amendment.  Plaintiffs' claim thus fails as a matter of law.

> 3.    Patients Consent to Observation of Procedures.

Observation of patient care is an integral part of any facility inspection or survey.  Indeed, each of the Plaintiffs here is subject to inspections conducted by trade associations or national organizations.  Codding Dep. 110:8-111:9; McElwain Dep. 106:20-107:22; Miller Dep. 104:20-105:10. Plaintiffs testified that as part of these inspections or surveys, representatives from the National Abortion Federation and/or Planned Parenthood Federation of America routinely seek permission from patients to observe procedures. Codding Dep. 111:10-11; McElwain Dep. 109:19-20; Miller Dep.104:20-105:10. Likewise, the VDH inspectors seek to observe patient care during biennial licensing inspections.  Middlebrooks Dep. 159:2-17; Codding Dep. 66:14-16; McElwain Dep. 142:1-5; Miller Dep. 119:6.  In every case, the health inspector secures written permission from the patient.  McElwain Dep. 145:19-22; Middlebrooks Dep.159:2-17; *see* Codding Dep. 69:9-17; C.T. Dep. 130:3-6.  There is no evidence before the Court that any patient's care has been observed without first obtaining that patient's written consent.  Having given voluntary consent to observe their care, Plaintiffs' patients have no Fourth Amendment claim.  If Plaintiffs' patients have no claim, Plaintiffs' claim on their behalf fails *a fortiori*.

**D.     Plaintiffs lack standing to challenge Virginia Code § 18.2-73, but if this Court concludes otherwise, the Court must narrow Virginia Code § 18.2-73 to accord with the relevant Supreme Court precedent.**

This Court allowed Plaintiffs' challenge to Virginia Code § 18.2-73 to proceed solely on an as-applied basis, dismissing the facial challenge to the hospital requirement as "definitively" rejected by the Supreme Court in *Simopoulos v. Virginia*, 462 U.S. at 519.  Mem. Op. at 16.  But under the plain language of the statute, Virginia Code § 18.2-73 does not apply to Plaintiffs. See Mem. in Supp. of Mot. to Dismiss at 6-7, ECF No. 21.

As explained at the motion to dismiss phase, Virginia Code § 18.2-73 requires second-trimester abortions to be "performed in a hospital licensed by the State Department of Health."  Va. Code Ann. § 18.2-73. Each Plaintiff in this case—with the exception of Dr. Doe—is classified

as a "hospital" under Virginia Code § 32.1-127. Am. Compl. ¶¶ 19-22. As such, each Plaintiff clinic falls squarely within the statutory definition of "any facility licensed pursuant to [Article I of Chapter 5 of Title 32.1] in which the primary function is the provision of diagnosis, of treatment, and of medical and nursing services, surgical or nonsurgical, for two or more nonrelated individuals." Because each Plaintiff clinic easily satisfies the definition of "hospital" under Virginia Code section 32.1-123, each plaintiff is a "hospital" for purposes of Virginia Code § 18.2-73. *Accord* 2010 Op. Va. Att'y Gen. 140, 141 ("Although 'abortion clinics' are not specifically mentioned, [Section 32.1-123's] definition encompasses facilities in which abortions are performed."); Va. Code Ann. § 32.1-127(B)(1) (expressly requiring plaintiffs to be licensed as "a category of hospital" under Article I of Chapter 5 of Title 32.1). No Plaintiff clinic is subject to criminal liability under Virginia Code § 18.2-73—and the undisputed facts demonstrate that no clinic has been criminally prosecuted under the statute. *See generally* Ex. 7, Pls.' Resp. to Defs.' First Interrogs. at 30. Their as-applied challenge must be dismissed.

With respect to Dr. Doe, the undisputed facts show that she performs abortion services at WWH-Charlottesville, which is "a hospital licensed by the State Department of Health." Va. Code Ann. § 18.2-73. The undisputed record evidence thus establishes that Dr. Doe is also not currently subject to criminal prosecution, and there is no evidence to suggest that she intends to provide abortion services in clinics that are not also hospitals licensed by the Department. Dr. Doe therefore also lacks standing to challenge to Virginia Code § 18.2-73.

In the alternative, should this Court should find that Plaintiffs do, in fact, have standing to bring an as-applied challenge to Virginia Code § 18.2-73, then Court will be confronted with a statute enacted in 1975 that is inconsistent with *Casey* and the Supreme Court's adoption of the viability standard. *Casey* "discarded the trimester framework" which served as the legal

21

underpinning for Virginia Code § 18.2-73 when it was adopted.  Instead, the Court drew the line

at viability.  505 U.S. at 878.  Because Virginia Code § 18.2-73 refers to all "second trimester"

abortion procedures (which encompass both pre- and post-viability abortions), Virginia Code §

18.2-73 is inconsistent with *Casey*.  Defendants submit that, to properly analyze the statute, the

Court should conform Virginia Code § 18.2-73 to *Casey*'s framework by narrowing the statute as

follows:

> Notwithstanding any of the provisions of § 18.2-71 and in addition to the provisions
> of § 18.2-72, it shall be lawful for any physician licensed by the Board of Medicine
> to practice medicine and surgery, to terminate or attempt to terminate a human
> pregnancy or aid or assist in the termination of a human pregnancy by performing
> an abortion or causing a miscarriage on any woman during the second trimester of
> pregnancy and prior to ~~the third trimester of pregnancy~~ *viability* provided such
> procedure is performed in a hospital licensed by the State Department of Health or
> operated by the Department of Behavioral Health and Developmental Services.

Federal courts are authorized to narrow state statutes to avoid constitutional issues consistent with

*Ayotte v. Planned Parenthood of Northern New Eng.*, 546 U.S. 320, 328-329 (2006).  In the

alternative, the Court may certify this question to the Supreme Court of Virginia for a

determination pursuant to Rule 5:40 of the Rules of the Supreme Court of Virginia.

**E.     Plaintiffs have not shown that Virginia Code § 32.1-127(B) imposes a substantial
burden, and Defendants are Entitled to Summary Judgment**

This Court should grant summary judgment to the Defendants on Count I of the Amended

Complaint because the undisputed facts in the record demonstrate that Virginia Code § 32.1-127,

the so-called "Licensing Statute," has neither the purpose nor the effect of placing a substantial

obstacle in the path of any Virginia woman seeking a pre-viability abortion.  As noted by this

Court in its Memorandum Opinion, "[t]he core claim in Counts I and II . . . is the stringency of the

regulations governing abortion providers and their effect on availability, not their arguable

classification as a form of hospital."  Mem. Op. at 14, ECF No. 52.  Yet Count I focuses *exclusively*

on Virginia Code § 32.1-127(B)(1), which provides that "facilities in which five or more first trimester abortions per month are performed shall be classified as a category of 'hospital.'" Va. Code Ann. § 32.1-127(B)(1)(v). Count I cannot survive summary judgment because the Licensing Statute does not, by itself, unconstitutionally burden a woman's right to seek an abortion.

This Court has recognized that "states have significant latitude to enact regulations to further the health and safety of a woman seeking an abortion[.]" Mem. Op. at 20, ECF No. 52." As this Court examines the undisputed factual record to determine whether a "substantial obstacle" is presented to a woman seeking an abortion, the Court should also be guided by an analysis of the effect of challenged laws as "compared to prior law." *Hellerstedt*, 136 S.Ct. at 2311; *see also Jackson Women's Health Org. v. Currier*, 320 F. Supp. 3d at 837.

Plaintiffs cannot show that the Licensing Statute imposes any burden on the right of women to choose a pre-viability abortion because even without the Licensing Statute, the Virginia Board of Health is empowered to promulgate regulations of abortion facilities because they qualify as a type of hospital. In an official advisory opinion issued on August 20, 2010, the Virginia Office of the Attorney General stated that:

> Virginia law provides that all hospitals in the Commonwealth are to be licensed and directs the State Health Commissioner to issue licenses in accordance with the regulations of the Board and other law…Although "abortion clinics" are not specifically mentioned, [the definition of a hospital] encompasses facilities in which abortions are performed…*Medical facilities that provide abortion services in addition to many other services across a variety of disciplines clearly are subject to regulation by the Board*…[T]his authority includes defining an "abortion clinic…"

2010 Op. Va. Att'y Gen. 140 (emphasis added). By the clear terms of the broad definition of a "hospital" under Virginia law and the mandate for the Board of Health to promulgate regulations (neither of which is challenged here), the Board of Health already had authority to promulgate regulations and define abortion facilities before the Licensing Statute was passed in 2011. Indeed,

23

the Licensing Statute could be read *to limit* the Board of Health's regulatory authority over abortion providers who perform fewer than five abortions each month.  Put differently, the Licensing Statute removes the Board of Health's discretion to promulgate regulations that may restrict providers of a small number of abortions, rather than solely mandating the promulgation of regulations that were already permitted under existing law.

In short, even if this Court invalidates the Licensing Statute, the Board of Health will continue to have authority to promulgate regulations like those that are challenged in Count II— the Licensing Statute is simply not a necessary component of the alleged Licensing Scheme and should not be considered in conjunction with the challenged regulations.  Tellingly, Plaintiffs continue to provide no facts to explain how the Licensing Statute, separate and apart from the Licensing Regulations that could be promulgated under separate statutory authority, imposes a substantial burden on a woman seeking an abortion in the Commonwealth of Virginia.  This Court should grant summary judgment in favor of the Defendants, both facially and as applied to the Plaintiffs, with respect to Count I.

**F.**   **Plaintiffs have not demonstrated that the individual regulations impose a substantial burden, and Defendants are Entitled to Summary Judgment on Count II.**

Throughout this case, Plaintiffs have refused to articulate any individual, specific burdens imposed by any individual, specific regulations.  Ex. 8, Pls.' Responses to Defs.' Requests for Admission Nos. 1-35.  Instead, Plaintiffs rely on general burdens imposed by the Regulatory Scheme as a whole.  Am. Compl. ¶ 255; ¶ 70 ("Plaintiffs challenge the entire body of regulations in this lawsuit"), ¶ 120 ("Plaintiffs challenge the set of regulations as a whole, because they must comply with all of them.").  Plaintiffs' omnibus approach to 12 Va. Admin. Code § 5-412 is a position wholly unsupported by Virginia law or federal abortion jurisprudence.  Each of the challenged regulations is distinct, severable, and individual.  Defendants, recognizing this fact,

articulated a specific state interest advanced by each regulation in response to Plaintiffs' discovery requests.  *See* Defs.' Objections and Third Supp. Answers to Pls.' First Interrogs., No. 2, **Exhibit 16**.  Plaintiffs' failure to identify an alleged burden imposed by each regulation in response to Defendants' discovery requests dooms its omnibus challenge to the Licensing Regulations.

      1.    <u>The specific Licensing Regulations are severable from each other</u>.

"Severability is of course a matter of state law."  *Leavitt v. Jane L.*, 518 U.S. 137, 139 (1996).  Virginia Code § 2.2-4004 states that

> The provisions of regulations adopted under this chapter or the application thereof to any person or circumstances that are held invalid shall not affect the validity of other regulations, provisions or applications that can be given effect without the invalid provisions or applications. The provisions of all regulations are severable unless (i) the regulation specifically provides that its provisions are not severable or (ii) it is apparent that two or more regulations or provisions must operate in accord with one another.

*See also Marshall v. N. Va. Transp. Auth.*, 657 S.E.2d 71, 76 (Va. 2008); *Sons of Confederate Veterans v. Comm'r of Va. Dep't of Motor Vehicles*, 288 F.3d 610, 628 (4th Cir. 2002) (applying the presumption of severability).  The Licensing Regulations promulgated by the Board of Health pursuant to Virginia Code § § 32.1-12 and 32.1-127(A) are exercises of legislative power delegated to the Board by the General Assembly.  Applications of specific acts of the General Assembly are subject to the presumption of severability explicitly favored by Virginia law.  *See Boyles v. Roanoke*, 19 S.E.2d 662, 663-64 (Va. 1942) (discussing presumption of severability in connection with local ordinances).

      2.    <u>Plaintiffs' Omnibus Challenge Has No Precedent.</u>

Defendants are aware of no federal court which has permitted a plaintiff to bring an omnibus challenge to abortion regulations without articulating the burdens associated with individual abortion restrictions, as the Plaintiffs have attempted to do in this case.  As the Court

noted in its analysis of Plaintiffs' dismissed Count VI claim, "this type of freestanding, collective claim is unfamiliar to abortion jurisprudence."   For example, in *Whole Woman's Health v. Hellerstedt*, the Supreme Court did not consider the whole of Texas Bill H.B. 2, but rather only two challenged provisions—the admitting-privileges requirement and the surgical-center requirement—and even then, the Court considered the burdens and benefits of each provision separately.   136 S. Ct. at 2300 ("We must here decide whether two provisions of Texas' House Bill 2 violate the Federal Constitution…") (analyzing Tex. Health & Safety Code Ann. §§ 171.0031(a) and  245.010(a)).   Other provisions from H.B. 2 remained intact despite the two provisions being found unconstitutional.[2]

Plaintiffs' Count II claim, as pled, is that "[i]n their entirety as a condition of licensure, the Licensing Regulations . . . in conjunction with the Criminalization Laws . . . impose an undue burden on the fundamental right to choose an abortion prior to viability."   Am. Compl. ¶ 255; *see also* ¶¶ 70 ("Plaintiffs challenge the entire body of regulations in this lawsuit"), ¶ 120 ("Plaintiffs challenge the set of regulations as a whole, because they must comply with all of them.").   Plaintiffs have failed to plead that any *individual regulation* among the Licensing Regulations is unconstitutional.[3]   So, although it is slightly narrower than Plaintiffs' dismissed Count VI claim, Count II suffers from the same defect.   *Cf.* Am. Compl. ¶ 255 *with* ¶ 264 ("The…Licensing Statute, Licensing Regulations, Hospital Requirement, Physician-Only Law, and/or Two-Trip Mandatory Delay Law, in conjunction with the Criminalization Laws…cumulatively violate Plaintiff's

---

[2] Similarly, the already existing abortion restrictions that include a physician-only requirement, an informed-consent requirement that requires a sonogram and a 24-hour waiting period, a licensing requirement, and unannounced inspections, among others, also remained undisturbed.  *See* Tex. Health & Safety Code Ann. §§ 171.003, -012, 245.003, -006.

[3] Certainly Plaintiffs have pled that certain regulations exist, *see e.g.* Am. Compl. ¶¶ 115, 117, 118, 124, 126,  and even pled burdens related to specific regulations, but Plaintiffs have failed to plead that any single regulation would be an unconstitutional, undue burden on its own.

patients' rights…because they have the unlawful purpose and effect of imposing an undue burden on the fundamental right to choose abortion before viability").

The Court need look no further than the analysis used by the Supreme Court in *Hellerstedt* to see why the individual Licensing Regulations should be analyzed individually. *Hellerstedt* established that the undue burden analysis requires a look at the prior existing law. 136 S. Ct. at 2311. As noted in the Amended Complaint, the Licensing Regulations are a composite of emergency regulations promulgated in 2011, permanent regulations promulgated in 2013, and additional regulations promulgated in 2017.[4] Am. Compl. ¶¶ 91, 96, 100. It is not possible to identify the prior law for the regulations "as a whole." Rather, the Court would have to inspect each regulations and determine whether its prior form dates to 2011, 2013, or 2017. Fortunately, the Court need not engage in such analysis because the U.S. Supreme Court has never sanctioned such an omnibus approach.

3.    Plaintiffs make no effort to identify an individual regulation's "burden."

Plaintiffs have failed to develop a factual record that shows that individual regulations pose a substantial obstacle to a woman's right to choose to undergo an abortion. In discovery, Plaintiffs identified no specific Virginia woman who had been burdened by any individual regulation within the Licensing Regulations. In response to an interrogatory requesting specific Virginia patients for whom the Licensing Scheme constituted an undue burden, Plaintiffs provided none. *See* Ex. 7, Pls.' Response to Dfs.' Interrogatory 1. Although Plaintiffs identified two Virginia women in

---

[4] Notably, *Melendez et al. v. Virginia Bd. of Health*, CL17001164-00 (Henrico Cty. Circuit Court) filed April 20, 2017, has held that thirteen of the 2017 regulations were administratively improper and will be stayed while six continue to be in effect, adding another layer of ambiguity to prior law with respect to Plaintiffs' omnibus challenge, should the Commonwealth choose not to appeal the decision. In addition, the Board of Health is continuing the regulatory process concerning the challenged regulations such that additional amendments to the regulations are anticipated.

their Supplemental Responses who claim to be burdened by Virginia's 24-hour delay associated with Virginia Code § 18.2-76, neither woman claims to be burdened by the facility regulations. **Exhibit 17**, Pls.' Second Suppl. Resp. to Dfs.' Interrogs.  When Defendants asked Plaintiffs to admit they had "not identified to Defendants a specific Virginia patient for whom [each individual challenged regulation] inhibited, infringed upon, or prevented access to abortion care (*See* Ex. 8, Pls.' Response to Dfs.' Requests for Admission No. 1-35), Plaintiffs denied each Request for Admission, stating, *inter alia*, "Plaintiffs… object to this Request to the extent it suggests that although they have challenged the Licensing Scheme as a whole, Plaintiffs must address how specific regulations are constitutionally infirm….Subject to and without waiving the Objections, Plaintiffs deny this Request for Admission.  Plaintiffs have produced substantial evidence in this litigation demonstrating that Virginia patients have been burdened by the *Licensing Regulations*." (emphasis added).  Put simply, Plaintiffs have consistently refused to articulate any burden associated with individual regulations despite several invitations to do so—and instead chose to rely on the general burdens alleged in association with the Licensing Regulations as a whole.

In contrast, Defendants have articulated a benefit associated with each regulation.  *See* Ex. 16, Defs.' Objections and Third Supp. Answers to Pls.' First Interrogs., No. 2.  Because no unconstitutional burden for any individual regulation has been identified and a benefit has been identified for each regulation, Plaintiffs' claim in Count II cannot succeed as a matter of law.

In sum, Count II asks this Court to rule an entire Chapter of Virginia's administrative code—12 VAC 5-412—unconstitutional without distinguishing between any of the component provisions.  That novel argument is not supported by Virginia law—which favors severance of unconstitutional provisions—or existing abortion jurisprudence.  An example that recently arose after the decision in *Melendez* highlights this issue.  Although nearly all of the regulations in 12

VAC 5-412 are individually constitutional—such as 12 VAC 5-412-10, which simply sets out the definitions—one provision that was reinstated by the Virginia circuit court is inconsistent with *Hellerstedt*: 12 VAC 5-412-370.[5] Given *Hellerstedt*, Defendants cannot defend that provision of the regulations, but if Plaintiffs' omnibus theory is correct, then the entirety of 12 VAC 5-412 is unconstitutional because of the presence of that single provision. There is no support for such an unusual proposition in Virginia or in 46 years of abortion jurisprudence. Absent any evidence that the individual regulations pose a substantial obstacle to women seeking an abortion, this Court should grant summary judgment in favor of Defendants on Count II.

### CONCLUSION

For the reasons set forth above, Defendants M. Norman Oliver, Robert Payne, Faye O. Prichard, Theophani Stamos, Anton Bell, Michael N. Herring, Colin Stolle, and Robert Tracci, by counsel respectfully request entry of summary judgment in their favor as to Counts I, II, III, IV, VII and VIII of the Amended Complaint filed against them by Plaintiffs.

---

[5] As noted, the time for appeal of the *Melendez* decision has not yet passed.

Dated:          March 11, 2019                    Respectfully submitted,

                                                  **M. NORMAN OLIVER, ROBERT PAYNE,
                                                  FAYE O. PRICHARD, THEOPHANI STAMOS,
                                                  ANTON BELL, MICHAEL N. HERRING,
                                                  COLIN STOLLE, and ROBERT N. TRACCI**

                                                  /s/ Emily M. Scott
                                                  Courtney Moates Paulk (VSB No. 45523)
                                                  Emily M. Scott (VSB No. 71435)
                                                  Jaime B. Wisegarver (VSB No. 81095)
                                                  HIRSCHLER FLEISCHER,
                                                  A PROFESSIONAL CORPORATION
                                                  The Edgeworth Building
                                                  2100 East Cary Street
                                                  Post Office Box 500
                                                  Richmond, Virginia 23218-0500
                                                  Telephone:    804.771.9500
                                                  Facsimile:    804.644.0957
                                                  E-mail:       cpaulk@hirschlerlaw.com
                                                                escott@hirschlerlaw.com
                                                                jwisegarver@hirschlerlaw.com
                                                                jomalley@hirschlerlaw.com

                                                  *Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of March 2019, I caused a true and correct copy of the foregoing to be electronically filed with the Clerk of Court for the Eastern District of Virginia, Richmond Division, using the Court's CM/ECF system, which thereby caused the above to be served electronically on all registered users of the Court's CM/ECF system.

/s/ Emily M. Scott_____
Courtney Moates Paulk (VSB No. 45523)
Emily M. Scott (VSB No. 71435)
Jaime B. Wisegarver (VSB No. 81095)
John P. O'Malley (VSB No. 92439)
HIRSCHLER FLEISCHER,
A PROFESSIONAL CORPORATION
The Edgeworth Building
2100 East Cary Street
Post Office Box 500
Richmond, Virginia 23218-0500
Telephone:    804.771.9500
Facsimile:    804.644.0957
E-mail:        cpaulk@hirschlerlaw.com
              escott@hirschlerlaw.com
              jwisegarver@hirschlerlaw.com
              jomalley@hirschlerlaw.com

*Counsel for Defendants*

11033433.1  043679.00001

31