**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

| | |
|---|---|
| FALLS CHURCH MEDICAL CENTER, LLC, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> M. NORMAN OLIVER, *et al.*, <br><br> Defendants. | CASE NO: 3:18-CV-428-HEH |

**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF LAW
REQUESTED BY THE COURT AT THE APRIL 8, 2019
<u>SUMMARY JUDGMENT HEARING</u>**

**TABLE OF CONTENTS**

                                                                                       **Page**

I. Virginia's Statutory Definition of Hospital Exempts Plaintiffs and the Hospital Requirement Is Vague. ...................................................................................................................................1

II. Because Defendants Concede that the Regulatory Hospital Requirement Is Unconstitutional, It Should Be Invalidated on Summary Judgment. ..........................................................................3

III. Plaintiffs' Challenge to the Licensing Statute and Regulations as a Scheme Is Consistent with Supreme Court and This Circuit's Precedent. ................................................................................4

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Billups v. City of Charleston*,
 331 F. Supp. 3d 500 (D.S.C. 2018) ............................................................................................9

*Bukvic-Bhayani v. Mitchell*,
 No. 3:17-cv-508 (W.D.N.C. Mar. 8, 2018) ................................................................................9

*Colautti v. Franklin*,
 439 U.S. 379 (1979) ................................................................................................................1, 4

*Cooksey v. Futrell*,
 721 F.3d 226 (4th Cir. 2013) .....................................................................................................9

*Falls Church Medical Center, LLC, et al. v. Oliver, et al.*,
 No. 3:18-CV-428-HEH (Apr. 8, 2019) ......................................................................................8

*June Med. Servs., LLC v. Gee*,
 306 F. Supp. 3d 886 (M.D. La. 2018) ........................................................................................7

*Kolender v. Lawson*,
 461 U.S. 352 (1983) ...................................................................................................................3

*McGlothian v. Fralin*,
 2019 WL 1087156 (E.D. Va. Jan. 23, 2019) .............................................................................9

*Planned Parenthood of Se. Pa. v. Casey*,
 505 U.S. 833 (1992) ...................................................................................................................1

*Planned Parenthood of Wis., Inc. v. Van Hollen*,
 738 F.3d 786 (7th Cir. 2013) .....................................................................................................1

*Simopoulos v. Virginia*,
 462 U.S. 506 (1983) ...................................................................................................................2

*Smith v. Goguen*,
 415 U.S. 566 (1974) ...................................................................................................................1

*Tucson Woman's Clinic v. Eden*,
 379 F.3d 531 (9th Cir. 2004) .....................................................................................................1

*Whole Woman's Health v. Cole*,
 790 F.3d 563 (5th Cir. 2015) .....................................................................................................6

*Whole Woman's Health v. Hellerstedt*,
 136 S. Ct. 2292 (2016) ....................................................................................................... passim

*Whole Woman's Health v. Lakey*,
 46 F. Supp. 3d 673 (W.D. Tex. 2014) ....................................................................................5, 8

# TABLE OF AUTHORITIES
# (Continued)

Page(s)

**Statutes, Regulations, and Other Authorities**

12 VAC § 5-220 ..................................................................................................................... 4

12 VAC § 5-410 ..................................................................................................................... 2

12 VAC § 5-412 *et seq.* ................................................................................................. *passim*

25 Tex. Admin. Code § 139.40 ............................................................................................. 8

Tex. Health & Safety Code Ann. § 245.010 ........................................................................ 5

Va. Code Ann. § 18.2-71 ...................................................................................................... 3

Va. Code Ann. § 18.2-73 ................................................................................................... 1, 3

Va. Code Ann. § 2.2-4004 .................................................................................................... 8

Va. Code Ann. § 32.1-102.1 ................................................................................................. 2

Va. Code Ann. § 32.1-123 .................................................................................................... 1

Va. Code Ann. § 32.1-124(v) ............................................................................................... 2

Va. Code Ann. § 32.1-126(A) .............................................................................................. 2

Va. Code Ann. § 32.1-127(B)(1) ...................................................................................... 2, 8

Va. Code Ann. § 54.1-2400.01:1 ......................................................................................... 2

Nat'l Acads. of Sci., Eng'g & Med., *The Safety and Quality of Abortion Care in the United States* 10 (2018) ........................................................................................................ 4

Pursuant to this Court's request at the April 8, 2019 summary judgment hearing, Plaintiffs respectfully submit the following Supplemental Memorandum of Law.[1]

### I. Virginia's Statutory Definition of Hospital Exempts Plaintiffs and the Hospital Requirement Is Vague.

What constitutes a "hospital," according to Defendants, is clear under Virginia law. But Defendants ignore multiple statutes, regulations, and legal precedent suggesting otherwise.[2] Virginia exempts second-trimester abortion care from the Felony Abortion Statute only if that care is provided in a VDH-licensed "hospital," but the Hospital Requirement does not specify what type of facility constitutes a "hospital," leaving providers to guess as to what may comply with the myriad legislative and administrative provisions. *See* Va. Code Ann. § 18.2-73.

- **Broad Definition:** The Virginia Code defines "hospital" as any facility "in which the primary function is the provision of diagnosis, of treatment, and of medical and nursing services, surgical or nonsurgical, for two or more nonrelated individuals . . . ." *Id.* § 32.1-123.[3]

- **Exemption:** Recognizing that this expansive definition would sweep in nearly every medical facility, for decades the Virginia Code has *explicitly excluded* physician's offices—including

---

[1] With respect to counsel's exchange with the Court at Tr. 8:11–16, Plaintiffs wish to clarify their position that: (1) under the undue burden standard, if a restriction fails to provide any benefits, any burdens it imposes are undue, *see Planned Parenthood of Wis., Inc. v. Van Hollen*, 738 F.3d 786, 798 (7th Cir. 2013); *Tucson Woman's Clinic v. Eden*, 379 F.3d 531, 540 (9th Cir. 2004); *see also Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 877 (1992) (holding that an abortion restriction is unconstitutional if "while furthering . . . [a] valid state interest" it creates a *substantial obstacle* to abortion access—not that burdens *substantially outweigh* benefits) (emphasis added); and (2) even if the standard required a showing of a certain threshold of burden, Plaintiffs have met that threshold here.

[2] In determining whether a law is unconstitutionally vague, courts should consider other factors beyond the "four corners" of the *specific* challenged statute or provision. *See, e.g.*, *Smith v. Goguen*, 415 U.S. 566, 582 n.31 (1974) (in holding a provision of a flag misuse statute unconstitutionally vague, observing that the "validity of [other] statutes utilizing this language, insofar as the vagueness doctrine is concerned, will depend as much on their judicial construction and enforcement history as their literal terms"); *Colautti v. Franklin*, 439 U.S. 379, 394–401 (1979) (considering related statutory provisions, a separate statute, and conflicting medical witness testimony in holding a statutory provision void for vagueness).

[3] This, with no further context, is the *sole* basis for Defendants' conclusion that "each Plaintiff clinic easily satisfies the definition of 'hospital.'" *See* Defs.' SJ Br. 21 (ECF 85).

those providing first-trimester abortion care—from any hospital licensing statutes and regulations unless the office was used principally for surgery.[4] *Id.* § 32.1-124(v).

- **Licensing Statute:** In 2011, the General Assembly changed course and singled out as a "category of hospital"—*for the limited purpose* of one paragraph of one statute—facilities providing five or more first-trimester abortions per month, and ordered the Virginia Board of Health ("VBH") to promulgate minimum facility-standard regulations for such facilities.[5] *Id*. § 32.1-127(B)(1) . The General Assembly did not amend any other section, paragraph, or sentence of the Virginia Code to classify first-trimester abortion clinics as "hospitals." *E.g.*, *id*. §§ 32.1-126(A), -127(B)(3).

- **The Licensing Regulations:** When VBH promulgated the Licensing Regulations pursuant to the Licensing Statute, it created a new category of licensure for "abortion facilities," 12 VAC § 5-412 *et seq.*, and removed "outpatient abortion clinic" as a type of "Outpatient Surgical Hospital," 29 Va. Reg. Regs. 2329–41 (May 20, 2013).[6] VBH then promulgated a regulation prohibiting licensed "abortion facilities" from providing second-trimester abortion care. 12 VAC § 5-412-230(A). Finally, licensed abortion facilities were exempted from the Certificate of Public Need requirement, despite its clear application to all "licensed hospitals." Va. Code Ann. § 32.1-102.1; Hilbert Dep. 267:4–12, Ex. 1.

These contradictory statutory definitions and regulations indicate that Plaintiffs' "licensed abortion facilities" do not qualify as "hospitals" under the broad definition Defendants rely upon to assert that Plaintiffs lack standing to challenge the Hospital Requirement. Defendants ignore that even if Plaintiffs qualify as "hospitals," they nonetheless face harm sufficient to confer standing because they must maintain licensure under the challenged Licensing Regulations in order to meet that definition—or otherwise would face prosecution. It is irrelevant whether Plaintiffs challenge the Licensing Regulations in Count III or VII—simply having to comply with them to qualify as a "hospital" confers standing.

---

[4] The current definition of "surgery" excludes all forms of first- and second-trimester abortion care, none of which involve incisions or cuts. *See* Va. Code Ann. § 54.1-2400.01:1; Oliver Dep. 143:9–144:8.

[5] That Licensing Statute, challenged in this lawsuit, states: "*For purposes of this paragraph*, facilities in which five or more first trimester abortions per month are performed shall be classified as a category of 'hospital.'" Va. Code Ann. § 32.1-127(B)(1) (emphasis added).

[6] This amended 12 VAC §§ 5-410-10, -60. From 1982 until January 2012, the definition of "outpatient surgical hospital" in the Hospital Regulations, 12 VAC § 5-410, explicitly included "outpatient abortion clinics," but hospital regulations in Virginia were not enforced against any physician's offices providing first-trimester abortions. *See Simopoulos v. Virginia*, 462 U.S. 506, 514 n.8 (1983).

The Hospital Requirement makes it impossible for Plaintiffs to "understand what conduct is prohibited" and invites "arbitrary and discriminatory enforcement," *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). Defendants' new position in this litigation only exacerbates the problem. As it stands, Plaintiffs believe they are prohibited from providing second-trimester abortion care in their licensed abortion facilities by two separate laws. *First*, as Plaintiffs explained in briefing, they reasonably believe that if they provide second-trimester abortion care, they would be subject to criminal penalties under the Felony Abortion Statute, Va. Code Ann. § 18.2-71, and Hospital Requirement, *id.* §18.2-73. Pls.' Resp. Br. 17 (ECF 106).[7] *Second*, Plaintiffs would face separate criminal and civil penalties for violating the Licensing Regulations, which prohibit them from providing any abortion after 13 weeks and 6 days LMP. 12 VAC §§ 5-412-130, -230(A).

## II. Because Defendants Concede that the Regulatory Hospital Requirement Is Unconstitutional, It Should Be Invalidated on Summary Judgment.

Even if this Court adopts Defendants' proposed interpretation as to the *statutory* Hospital Requirement, Va. Code Ann. § 18.2-73, it should nevertheless grant Plaintiffs' motion for summary judgment invalidating the *regulatory* hospital requirement set forth in 12 VAC § 5-412-230(A).[8] That regulation *independently* prohibits Plaintiffs from providing second-trimester abortions in licensed abortion facilities. Defendants have already conceded that second-trimester abortions are extremely

---

[7] Except VLPP's Virginia Beach facility, Plaintiffs are licensed as "abortion facilities" under 12 VAC § 5-412 *et seq.* They are not licensed as "hospitals" under 12 VAC § 5-410 *et seq.*, and until this litigation, Defendants never treated them as such for purposes of the Hospital Requirement.

[8] If the Court concludes that licensed abortion facilities are "hospitals" under Va. Code Ann. § 32.1-123, Plaintiffs respectfully request an explicit ruling to this effect to provide Plaintiffs with sufficient clarity to comply with the Hospital Requirement, violation of which imposes strict-liability Class 4 felony penalties. Additionally, Plaintiffs continue to assert their claim that this statute is unconstitutional because it subjects providers to unnecessary and burdensome licensure requirements, potentially including those related to Certificates of Public Need. *See* 12 VAC § 5-220 *et seq.*

3

safe,[9] and that requiring all second-trimester abortions to be provided in a general acute or outpatient surgical hospital is unconstitutional under *Whole Woman's Health*, Defs.' SJ Reply Br. 4–5, so there are no factual disputes to try before determining the validity of this regulation. Whether the Complaint expressly tied 12 VAC § 5-412-230(A) to Claim III is immaterial; the Complaint challenges this regulation and seeks to invalidate it, *see id.* at 2, 61, and Defendants have conceded that the restriction it imposes is invalid. Summary judgment for Plaintiffs invalidating this regulation is therefore warranted, and will simplify the evidentiary issues remaining for trial.[10]

### III. Plaintiffs' Challenge to the Licensing Statute and Regulations as a Scheme Is Consistent with Supreme Court and This Circuit's Precedent.

Defendants' arguments for severing the Licensing Regulations and considering each in isolation rather than as a whole were explicitly rejected by the Supreme Court in *Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292 (2016).[11] Plaintiffs here—as in that case—challenge a specific

---

[9] It is undisputed that, because of major medical advances over the past several decades, the modern methods of second-trimester abortion—aspiration and dilation and evacuation—are extremely safe and brief procedures that do not require any surgical incision or heavy sedation, and are comparable in safety to a range of other procedures currently provided in Virginia physician's offices. *See* Pls.' SJ Br. 3–4, 6–9 (ECF 95); Nat'l Acads. of Sci., Eng'g & Med., *The Safety and Quality of Abortion Care in the United States* 10 (2018), PLAINTIFF-0069997–70197 (ECF 107-6, 107-7, 107-8); Nichols Decl. ¶¶ 14, 20, 21 (ECF 96); Nichols Dep. 49:19–22; 76:6–9 (ECF 101-4); Ramesh Dep. 126:6–17, 129:10–14, 131:11–14 (ECF 101-1); Dr. Doe Dep. 85:19–89:8 (ECF 101-6); Oliver Dep. 201:20–202:1 (ECF 101-5) ("I believe the standard of care for abortion services would be that first and second trimester terminations can be done on an outpatient basis.").

[10] With no medical justification, Defendants propose that any relief be limited to pre-viability abortion. Plaintiffs note that the Hospital Requirement is a strict-liability penal statute without a scienter requirement, and viability is determined on a case-by-case basis according to the physician's medical judgment and not, as Defendants suggest, according to a fixed gestational age set by a legislature or court. *Colautti*, 439 U.S. 379, 388- 89 (1979).

[11] Virginia Attorney General Mark Herring's Amicus Brief in support of the plaintiffs in *Whole Woman's Health* noted that a regulatory scheme should be challenged in whole, and the undue burden test, properly understood: (i) "forbids abortion regulations that purport to promote women's health but actually fail to do so"; (ii) "requires meaningful judicial review" that "does not permit courts to accept a State's health judgments uncritically"; (iii) "requires a State to demonstrate that a regulation assertedly enacted to promote women's health would actually advance the State's interest"; and (iv) dictates that "the availability of abortion services in other states does not permit a State to impose an

statute that requires the department of health to regulate abortion clinics as a statutorily-defined type of facility (in Texas, an "ambulatory surgical center," and in Virginia, "as a category of hospital") and to promulgate a unified scheme of regulations that specify "minimum standards" to effectuate the statute. The Supreme Court evaluated the regulatory scheme as a whole in *Whole Woman's Health*, and Plaintiffs submit that is the proper course here.

*Whole Woman's Health* involved a challenge to a Texas statute that required abortion clinics to meet the same minimum standards as ambulatory surgical centers (the "ASC Requirement"). Tex. Health & Safety Code Ann. § 245.010. As with the Licensing Statute challenged here, that statute required the relevant state agency to adopt rules to implement the statute. *Whole Woman's Health*, 136 S. Ct. at 2308. That agency, like VDH here, issued regulations that governed, among other things, aspects of patient care on the basis of "health and safety," including requirements for medical records, training, and cleanliness. Justice Alito described these ASC regulations as "lengthy and detailed" and "numerous." *Id.* at 2350, 2352 (Alito, J., dissenting); *see also id*. at 2314–15 (listing a portion of the lengthy requirements).

There, Plaintiffs challenged the ASC Requirement and implementing regulations as a whole—a fact addressed at *each* stage of litigation leading to the Supreme Court (bold throughout):

- The District Court found the entire body of regulations unconstitutional, explicitly rejecting Texas' argument that it should sever only those regulations that imposed an undue burden. *Whole Woman's Health v. Lakey*, 46 F. Supp. 3d 673, 687 (W.D. Tex. 2014). The defendants had unsuccessfully argued that "**[t]he severability provisions specifically provide that applications of HB2 that do not present an undue burden** as applied to any particular patients or providers or groups of patients or providers **must be severed and allowed to remain in force.**" State Defs.' Mot. to Dismiss 11–12, *id.*, No. 1:14-cv-284-LY (W.D. Tex. May 2, 2014) (ECF 48), Ex. 3.

- On appeal, defendants argued that "[t]he State's ASC regulations impose hundreds of different requirements, **each of which is severable from the others**"; and "[t]he plaintiffs

---

undue burden on abortion access within the State." *See generally* Amicus Br. for Various States, including the Commonwealth of Virginia, *Whole Woman's Health v. Cole*, No. 15-274, at 10 (Jan. 2016), Ex. 2.

5

did not allege or prove that *any* ASC rule other than section 135.52 would cause *any* abortion clinic to close." Appellants' Br. 41–42, *Whole Woman's Health v. Lakey*, No. 14-50928 (5th Cir. Nov. 3, 2014), Ex. 4

- The Fifth Circuit reversed, noting that the ASC regulations included operational requirements that "were comparable to the standards with which abortion facilities were already required to comply" and "conclud[ed] that the district court erred by not constraining its injunction to **only those regulations that create an undue burden**, namely, § 135.51–.56 (physical plant) and § 135.41 (fire prevention)." *Whole Woman's Health v. Cole*, 790 F.3d 563, 595 (5th Cir. 2015).

- At the Supreme Court, Texas reiterated its argument that "instead of finding the entire surgical-center provision unconstitutional, [the Court] should invalidate (as applied to abortion clinics) **only those specific surgical-center regulations that unduly burdened the provision of abortions, while leaving in place other surgical-center regulations**," *Whole Woman's Health*, 136 S. Ct. at 2319, and argued that many of the seemingly benign requirements, including that facilities shall be clean and maintained, "cannot possibly be regarded as undue burdens on abortion access." Br. of Resp. 52–53, *Whole Woman's Health v. Hellerstedt*, No. 15-274 (Jan. 2016).

The Supreme Court rejected the State's invitation to sever and struck down the ASC Requirement and its implementing regulations as a whole, holding that "[t]he statute was meant to require abortion facilities to meet the integrated surgical-center standards—not some subset thereof." *Whole Woman's Health*, 136 S. Ct. at 2319. It did not discuss the benefits and burdens stemming from individual regulations—although Justice Alito advocated for that approach at oral argument:

> JUSTICE ALITO: It's work, but **maybe the district court should have done that work.** I mean, I read through this, and I was surprised. I read through these regulations. **I was surprised by how many are completely innocuous**. And many of them have nothing to do—they have to do with basic safety. They don't even have anything to do, in particular, with abortion. So the entrances to the clinic have to be at grade level. You have to have an elevator. The—the corridors have to be wide enough so that you could bring in a stretcher if somebody has to be taken to the hospital. And—and things of that nature . . . **I don't know why things couldn't have been severed out** . . . .

Tr. of Oral Arg. 26–27, *Whole Woman's Health*, No. 15-274 (Mar. 2, 2016), Ex. 5; *see also Whole Woman's Health*, 136 S. Ct. at 2350 (Alito, J., dissenting).

Thus, the Supreme Court expressly considered and rejected Texas' severability argument and Justice Alito's proposed approach to strike only those specific regulations that imposed an undue

6

burden, holding that an unconstitutional scheme cannot survive by severing out regulations on a piecemeal basis. *Id.* at 2319. Indeed, even a severability clause that was *within the challenged scheme* there could not save the scheme's unconstitutionality—and even more so here, where the severability clause Defendants highlight is part of neither the statute nor the scheme.[12]

The arguments Defendants make before this Court are identical to those the Supreme Court explicitly considered and rejected. *See infra* at 8. Virginia's Licensing Regulations operate as a scheme. *See* 12 VAC §§ 5-412-130(A), -140(A). Plaintiffs cannot pick and choose which regulations to follow: they work together, and the scheme expressly provides that failure to comply with any one regulation can result in immediate revocation or suspension of license. Furthermore, because the Licensing Statute requires the Licensing Regulations to set specific "minimum standards," any subset of the regulations would fail to effectuate the statute's mandate—the exact same shortcoming that the Supreme Court cited in holding that a "subset of regulations" could not survive. *Whole Woman's Health*, 136 S. Ct. at 2319 (reasoning that if the facilities were only subject to a subset of those regulations, they would not be surgical centers). The Supreme Court rejected Texas' "invitation to pave the way for legislatures to immunize their statutes," and this Court should do the same. *See id.*; *June Med. Servs., LLC v. Gee*, 306 F. Supp. 3d 886, 893 (M.D. La. 2018) (a state cannot "attack abortion providers in a death-by-a-thousand-cuts strategy, evading review by legislating in a piecemeal fashion.").

---

[12] A separate statute, Va. Code Ann. § 2.2-4004, makes "the provisions of all regulations" severable, but importantly, it *exempts* from that default rule situations where it is "apparent that two or more regulations or provisions must operate in accord with one another." It is undisputed that the plain language of 12 VAC §§ 5-412-130(A) and -140(A) requires abortion facilities to comply with *all* of the Licensing Regulations, making clear that all of the Licensing Regulations must and do operate in accord with one another. And the OLC inspectors may, and do, classify the same incident or conduct as constituting multiple violations of different Licensing Regulations, Bodin Dep. 272:21–273:19 (ECF 108-1), a result mandated by clear regulatory language throughout the scheme. *See, e.g.*, 12 VAC §§ 5-412-100(A), -130(A), -140(A), (C)(2), -160(A)(11).

7

Case 3:18-cv-00428-HEH Document 121 Filed 04/15/19 Page 12 of 16 PageID# 4245

| ***Whole Woman's Health*** | ***Falls Church v. Oliver*** |
|---|---|
| Plaintiffs sought relief from certain requirements imposed by enabling statute requiring minimum standards for abortion facilities and its implementing regulations. *See Whole Woman's Health*, 136 S. Ct. at 2308, 2314. | Plaintiffs seek relief from certain requirements imposed by enabling statute, the Licensing Statute, Va. Code Ann. § 32.1-127(B)(1), requiring minimum standards for abortion facilities, and its implementing regulations, the Licensing Regulations, 12 VAC § 5-412 *et seq.* |
| The implementing regulatory scheme promulgated per the statute applied only to abortion facilities. *Whole Woman's Health*, 136 S. Ct. at 2314. | The implementing regulatory scheme promulgated per the statute applies only to first-trimester abortion facilities. Va. Code Ann. § 32.1-127(B)(1). |
| Abortion facilities must comply with the entire regulatory scheme without exception. *Whole Woman's Health*, 136 S. Ct. at 2315. | First trimester abortion facilities' licenses depend on compliance with entire regulatory scheme without exception. 12 VAC § 5-412-130(A). |
| The enabling statute contained a severability clause: "every provision, section, subsection, sentence, clause, phrase, or word in this Act, and every application of the provisions in this Act, are severable from each other." H.B. 2 § 10(b). | There is **no severability clause** in the Licensing Statute.<br><br>Defendants instead point to a severability provision in a separate statute. *See* Va. Code Ann. § 2.2-4004. |
| The adopted regulations contained a severability clause that attempted to insulate the constitutionality of individual regulations. *See* 25 Tex. Admin. Code § 139.40 (noting if any regulation "is found by a state or federal court to violate the Constitution or impose an 'undue burden' on women seeking abortions, the department **shall continue to enforce the remaining incorporated rules** that do not violate the Constitution or impose an 'undue burden' on women seeking abortions. . . .") | There is **no severability clause** in the Licensing Regulations.<br><br>Defendants instead point to a discretionary provision allowing VDH to grant variances from "clearly impractical" provisions. 12 VAC § 5-412-80. |
| Defendants argued that the Court should sever individual regulations and that each regulation must be evaluated independently to determine whether it imposed an undue burden. *See Whole Woman's Health v. Lakey*, 46 F. Supp. 3d 673, 687 (W.D. Tex. 2014). | Defendants argue that this Court should sever individual regulations and that each regulation must be evaluated independently to determine whether it imposes an undue burden. Memo ISO Defs.' Motion for Summary Judgment at 25. |
| At oral argument, the Supreme Court discussed whether to strike individual regulations rather than entire scheme, and Justice Alito commented that some of the individual regulations seemed fairly "innocuous" and not burdensome. *See supra* 6-7. | At oral argument, Defendants argued that the Licensing Regulations could not be challenged as a whole. *See* Ex. 6 at 66–72, 78–80, *Falls Church Medical Center, LLC, et al. v. Oliver, et al.*, No. 3:18-CV-428-HEH, (Apr. 8, 2019). |
| The Supreme Court rejected defendants' invitation to sever and rule regulation-by-regulation, regardless of the basis for severability—whether it be statute or regulation—reasoning that "[t]he statute was meant to require abortion facilities to meet the integrated surgical-center standards—not some subset thereof." *Whole Woman's Health*, 136 S. Ct. at 2319–20. | This Court should do the same. |

8

Finally, numerous courts in this Circuit have adjudicated challenges to statutory and regulatory schemes in whole. *See, e.g.*, *Cooksey v. Futrell*, 721 F.3d 226, 230–33 (4th Cir. 2013) (vacating dismissal of challenge to entire licensing scheme governing dietitians); Compl., *Cooksey*, No. 3:12-cv-336 (W.D.N.C. May 29, 2012), Ex. 7; *McGlothian v. Fralin*, 2019 WL 1087156, at *2 (E.D. Va. Jan. 23, 2019) (denying dismissal of a collective challenge to a licensing scheme requiring vocational educators to comply with statutory and regulatory certification requirements); Compl., *McGlothian*, No. 3:18-cv-507-REP (E.D. Va. July 23, 2018), Ex. 8; *Billups v. City of Charleston*, 331 F. Supp. 3d 500, 517 (D.S.C. 2018) (striking as unconstitutional a statutory and regulatory licensing scheme imposed on city tour guides); Compl., *Billups*, 2:16-cv-264-DCN (D.S.C. Jan. 28, 2016), Ex. 9; *Bukvic-Bhayani v. Mitchell*, No. 3:17-cv-508 (W.D.N.C. Mar. 8, 2018) (ECF 30) (First Amendment challenge to an enabling statute and implementing regulations that precluded a makeup school from opening).

To require Plaintiffs to do anything more than those in *Whole Woman's Health* or any of the cases above would not only be prejudicial, but also contrary to governing precedent and elevate the pleading standard for this case only. Plaintiffs understand the Court's concern that unless they specify which regulations they are challenging as unconstitutional, Defendants will lack notice of how to prepare for trial. To that end, Plaintiffs clarify they are challenging the Licensing Regulations in their entirety, as a package. That approach would *not* extend trial or require additional witnesses, as Plaintiffs' evidence will address the effects of the regulations as a whole—all of which they must comply with as a condition of licensure—not whether each individual regulation imposes an undue burden.[13] That is exactly how discovery was conducted and how trial should proceed.

---

[13] Under *Whole Woman's Health*, courts should not uncritically defer to the state's mere articulation of its interest. *See* 136 S. Ct. at 2310. Rather, the state must present credible and reliable evidence demonstrating that a challenged restriction *actually furthers* the interest asserted and confers benefits

For the reasons described *supra*, none of the individual Licensing Regulations should be considered separately or in a vacuum. VDH may revoke or indefinitely suspend an abortion facility's license should it fail to comply with any of the 37 "separate" Licensing Regulations Defendants repeatedly referenced at oral argument (virtually all of which contain numerous subparts and/or separate, cross-listed requirements), any and "all applicable federal, state, and local statutes and regulations," and "the facility's internal policies and procedures." *See* 12 VAC §§ 130(A); 140(A). That being said, three categories of regulations within the Licensing Regulations are particularly burdensome, although all the regulations create an improper level of legal risk because failure to comply in any way with any single regulation can result in suspension or revocation of licensure. First, the Licensing Regulations condition licensure on numerous unnecessary and especially burdensome restrictions that are not imposed on either second-trimester abortion providers—both general hospitals or outpatient surgical centers—or providers of comparable or riskier outpatient procedures like colonoscopies. *See* 12 VAC §§ 5-412-20; 60(A), (C); 70(B)-(C); 90; 100(A)-(B); 110; 130(A), (C); 140(A); 160(A); 210. Second, the regulations related to warrantless, unannounced inspections, which vary according to the interpretations of individual inspectors, are extremely burdensome for the clinics and patients. *See id.* §§ 5-412-20; 60(C); 70(C); 90; 100; 110; 120; 130; 140(C). Third, certain regulations improperly codify evolving and discretionary medical practice and force the creation of one-size-fits-all clinical policies. *See id.* §§ 5-412-20; 60(A); 140(A); 150; 160; 170(A); 180-240; 260(B), (C); 270-350.

---

that outweigh its burdens. *See id*. at 2309–10. Here, Defendants have merely copied and pasted, in their Interrogatories, several state "interests" that they claim are advanced in whole or in part by each of the Licensing Regulations, and have not even attempted to point to evidence in the record demonstrating that their claimed state interests are actually furthered by any of the Licensing Regulations, either individually or as a whole.

10

Dated: April 15, 2019

Respectfully submitted,
/s/ D. Sean Trainor
D. Sean Trainor (VSB No. 43260)
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006
Phone: (202) 383-5114
Fax: (202) 383-5414
Email: dstrainor@omm.com

Leah Godesky*
Nathaniel Asher*
O'MELVENY & MYERS LLP
7 Times Square
New York, NY 10036
Phone: (212) 326-2000
Fax: (212) 326-2061
Email: lgodesky@omm.com
Email: nasher@omm.com

Nicole Gloria Tortoriello (VSB No. 91129)
Eden B. Heilman (VSB No. 93554)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF VIRGINIA, INC.
701 E. Franklin Street, Suite 1412
Richmond, Virginia 23219
Phone: (804) 644-8080
Email: ntortoriello@acluva.org

*Attorneys for all Plaintiffs*

Jenny Ma*
Gail M. Deady (VSB No. 82035)
Amy Myrick*
Michelle K. Moriarty*
Rabia Muqaddam*
CENTER FOR REPRODUCTIVE RIGHTS
199 Water Street, 22nd Floor
New York, New York 10038
Phone: (917) 637-3600
Fax: (917) 637-3666
Email: jma@reprorights.org
Email: gdeady@reprorights.org

*Attorneys for Plaintiffs Falls Church Medical Center, LLC; Whole Woman's Health Alliance; and Dr. Doe*

Alice Clapman*
Hannah Swanson**
PLANNED PARENTHOOD FEDERATION OF AMERICA, INC.
1110 Vermont Ave. NW, Suite 300
Washington, DC 20005
Phone: (202) 973-4800
Fax: (202) 296-3480
Email: alice.clapman@ppfa.org

*Attorneys for Plaintiff Virginia League for Planned Parenthood*

* Admitted Pro Hac Vice
**Motion for Admission Pro Hac Vice to be filed

## CERTIFICATE OF SERVICE

I hereby certify that on April 15, 2019 a copy of the foregoing has been served upon all counsel of record in this action by electronic service through the Court's CM/ECF system.

/s/ D. Sean Trainor
D. Sean Trainor (VSB No. 43260)