# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# RICHMOND DIVISION

| | |
|---|---|
| FALLS CHURCH MEDICAL CENTER, LLC, *et al.*, | |
| Plaintiffs, | |
| v. | CASE NO: 3:18-CV-428-HEH |
| M. NORMAN OLIVER, *et al.*, | |
| Defendants. | |

**MEMORANDUM OF LAW IN REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE THE OPINIONS AND TRIAL TESTIMONY OF JAMES STUDNICKI, SC.D.**

## TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................................................... 1

LEGAL STANDARD..................................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

    A.    Defendants fail to offer any evidence to counter Plaintiffs' arguments challenging several of Dr. Studnicki's opinions, and they should be excluded on that basis alone. ................................................................................................................... 2

    B.    Dr. Studnicki is free to cabin his opinions about declining abortion rates to the uncontroversial assertion that national abortion rates are declining, but his actual and broader conclusion that Virginia's rate tracks that decline should be excluded. ......... 3

    C.    Defendants fail to proffer any evidence that Dr. Studnicki's flawed time-series analysis reliably supports his conclusion that Virginia's abortion rate decline is explained by national rates............................................................................................ 4

    D.    Dr. Studnicki's "demonstrated capacity" concept is not a recognized or reliable methodology for assessing supply and demand. ................................................ 6

    E.    Plaintiffs do not "assume" travel is burdensome, the literature demonstrates that it is, and Dr. Studnicki's "disagreement" is an unreliable criticism. ..................... 7

CONCLUSION............................................................................................................................... 8

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cooper v. Smith & Nephew, Inc.*,
   259 F.3d 194 (4th Cir. 2001) ................................................................................................ 1

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
   509 U.S. 579 (1993) ......................................................................................................... 1, 6

*Edwards v. Ethicon, Inc.*,
   2014 WL 3361923 (S.D.W. Va. July 8, 2014) .................................................................... 2

*In re Lipitor Mktg., Sales Practices & Prod. Liab. Litig.*,
   892 F.3d 624 (4th Cir. 2018) ............................................................................................ 4, 6

*In re Processed Egg Prod. Antitrust Litig.*,
   312 F.R.D. 124 (E.D. Pa. 2015) .......................................................................................... 5

*McEwen v. Balt. Wash. Med. Ctr. Inc.*,
   404 F. App'x 789 (4th Cir. 2010) ................................................................................ 1, 7, 8

*Md. Cas. Co. v. Therm-O-Disk, Inc.*,
   137 F.3d 780 (4th Cir. 1998) ............................................................................................... 1

*Sanchez v. Bos. Sci. Corp.*,
   2018 WL 3190762 (S.D.W. Va. June 28, 2018) .............................................................. 1, 3

**Rules**

Fed. R. Civ. P. 26(e)(1)(A) ....................................................................................................... 4

## INTRODUCTION

Plaintiffs move to exclude the opinions and trial testimony of Dr. Studnicki because each of his opinions is unreliable under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Defendants attempt to rhetorically rephrase some of Dr. Studnicki's opinions, but fail to proffer even one citation to his Report that supports these recharacterizations in opposition to Plaintiffs' *Daubert* motion. Defendants refer, in fact, to *only one* paragraph in Dr. Studnicki's Report in their Opposition. Aside from these superficial, belated attempts to introduce some nuance and restraint into certain of Dr. Studnicki's opinions in the face of Plaintiffs' challenge to their reliability, Defendants wholesale abandon the remainder his opinions also challenged as independently unreliable. Because Defendants fail to proffer any evidence—much less a preponderance of proof—to carry their burden to demonstrate the admissibility of any of Dr. Studnicki's conclusions, the Court should exclude Dr. Studnicki's opinions and testimony in full.

## LEGAL STANDARD

The proponent of expert testimony has the burden of establishing by a preponderance of proof that the proffered testimony is relevant and reliable. *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001). To meet that burden, the proponent must "come forward with *evidence* from which the court can determine that the proffered testimony is properly admissible." *Md. Cas. Co. v. Therm-O-Disk, Inc.*, 137 F.3d 780, 783 (4th Cir. 1998) (emphasis added). When an opponent moves to exclude expert testimony as unreliable, the proponent must present such evidence that *addresses* the movant's arguments. *Sanchez v. Bos. Sci. Corp.*, 2018 WL 3190762, at *5 (S.D.W. Va. June 28, 2018). The proponent cannot merely argue that their expert relies on "well-established and reliable principles and methodologies." *McEwen v. Balt. Wash. Med. Ctr. Inc.*, 404 F. App'x 789, 791 (4th Cir. 2010) (quotation omitted). The proponent must instead point

1

to elements of the expert's actual opinions or other evidence that counters the movant's arguments. *See, e.g.*, *Edwards v. Ethicon, Inc.*, 2014 WL 3361923, at *4 (S.D.W. Va. July 8, 2014).

## ARGUMENT

**A. Defendants fail to offer any evidence to counter Plaintiffs' arguments challenging several of Dr. Studnicki's opinions, and they should be excluded on that basis alone.**

Plaintiffs contend that each of Dr. Studnicki's opinions is independently unreliable. *See* Plaintiffs' Motion to Exclude the Opinions and Trial Testimony of James Studnicki, Sc.D. ("Pls. Mot. Exclude Studnicki") (ECF No. 123). But Defendants can only muster a defense as to three aspects of his testimony—(1) Dr. Studnicki's time-series analysis; (2) his invention of "demonstrated capacity"; and (3) his disregard for the literature demonstrating the burdens of travel distance on women seeking abortion. *See* Defendants' Response in Opposition to Plaintiffs' Motion to Exclude Testimony of Dr. James Studnicki ("Defs. Opp. Studnicki") (ECF No. 127).

But Plaintiffs *also challenge* the reliability of Dr. Studnicki's claims that—(4) Virginia women were not experiencing delays in accessing abortion care, along with the associated charts, *see* Pls. Mot. Exclude Studnicki at 13-14; Exhibit 3 to Pls. Mot. Exclude Studnicki, January 4, 2018 Rebuttal Report of Dr. James Studnicki ("Studnicki Rep.") (ECF No. 123-3) ¶¶ 29-31, 36-38, 47, Figures 10-11; (5) out-of-state abortions were not increasing during his benchmark period, along with the associated charts, Pls. Mot. Exclude Studnicki at 10-11; Studnicki Rep. ¶¶ 13-16, Figures 1-2, Table 1; and (6) his claim that "a preponderance of science says there is no evidence that restrictive legislation is a main factor in abortion clinic closures," Pls. Mot. Exclude Studnicki at 14-15; Studnicki Rep. ¶¶ 14, 48.

Defendants fail to address this set of arguments, offering nothing in support of Dr. Studnicki's testimony and therefore providing no basis for the Court to conclude that these opinions are reliable. Given that Defendants "have failed to address" Plaintiffs' *Daubert*

2

"arguments in their briefing," this court should strike these opinions. *Sanchez*, 2018 WL 3190762, at *5 ("declin[ing] to raise counterarguments" not presented in the parties' briefing).

**B. Dr. Studnicki is free to cabin his opinions about declining abortion rates to the uncontroversial assertion that national abortion rates are declining, but his actual and broader conclusion that Virginia's rate tracks that decline should be excluded.**

Defendants' description of Dr. Studnicki's opinion regarding abortion rates as only highlighting the "national trend in abortion rates" is inaccurate on the face of his report. Plaintiffs challenge Dr. Studnicki's opinion that Virginia's decline *is explained by* the national decline in abortions and unrelated to the laws and regulations at issue in this case. Studnicki Rep. ¶ 12, 48, Figure 1; Pls. Mot. Exclude Studnicki at 6-10. No party disputes that national abortion rates have declined, and Plaintiffs do not assert that any expert need "establish an exact accounting of abortion procedures in any particular year." Defs. Opp. Studnicki at 2.

Plaintiffs do raise a challenge to Dr. Studnicki's *much broader conclusion*—that there is no basis in the rate of decline in Virginia to think that any of the Challenged Laws resulted in any deviation from the national decline. Pls. Mot. Exclude Studnicki at 6-10. Counsel for Defendants replicates Dr. Studnicki's unjustified leap that, given that both nationally and in Virginia abortion rates are generally declining, the trend in Virginia is "likewise" explained by the national decline. Defs. Opp. Studnicki at 4; Studnicki Rep. ¶ 12. But Defendants offer no *support* for this conclusion, either in Dr. Studnicki's report or anywhere else. Dr. Studnicki's opinions about abortion rates should therefore be excluded because they attempt to tie Virginia's declining abortion rate to the national trend without any reliable support. Dr. Studnicki makes this same unsupported leap regarding the national decline in unintended pregnancy—a factor, which is also not disputed and also does not provide any insight into the deviation between Virginia's rate of abortion and the rate nationally. Studnicki Rep. ¶¶ 17-24, 39, Figures 4-5, 12-13, Table 8-9.

3

### C. Defendants fail to proffer any evidence that Dr. Studnicki's flawed time-series analysis reliably supports his conclusion that Virginia's abortion rate decline is explained by national rates.

Defendants attempt to bolster their expert's time-series analysis with argument divorced from any of Dr. Studnicki's opinions. Defendants first point the finger at Dr. Myers and assert that a figure she corrected in her tests of Dr. Studnicki's analysis are responsible for the structural break in his Virginia time series. *See* Defs. Opp. Studnicki at 5. Defendants then conclude without citation[1] that "when the correct numbers are used," there is no structural break—a new statistical conclusion—which is unsupported by any expert opinion, far outside the scope of Dr. Studnicki's report, and performed on a dataset that Dr. Studnicki did not use in constructing his time series.[2] *See id.*

Defendants are quantitatively incorrect about the accuracy of Dr. Myers's testing—she found a structural break in Dr. Studnicki's Virginia time series after performing three discrete statistical tests, using the Virginia abortion rate for 2013 (12.4%) *that Defendants identify as*

---

[1] An expert witness has a duty to supplement their report "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). Here, Defendants introduce new opinions without even filing a supplemental report. Plaintiffs intend to file a Motion in Limine to exclude two new opinions introduced by Counsel within their Opposition, (1) the assertion that additional testing on VDH data shows no structural break, Defs. Opp. Studnicki at 5, and (2) the conclusion that "the more consequential the reason for the trip, the less influential travel distance is in selecting the destination," *id.* at 7 (emphasis omitted). Neither of these opinions appears within Dr. Studnicki's report or any of his sources, and neither is based in any supplemental evidence.

[2] Separate and apart from their failure to timely disclose this analysis or provide more than a one-sentence description of its parameters, Defendants, like Dr. Studnicki, stumble over the prohibition on result-driven analysis. *See In re Lipitor Mktg., Sales Practices & Prod. Liab. Litig.*, 892 F.3d 624, 634 (4th Cir. 2018) (Agee, J., concurring) (noting exclusion of expert whose "test selection was 'result driven,'" and explaining that "cherry-picking . . . undermines principles of the scientific method and is a quintessential example of applying methodologies (valid or otherwise) in an unreliable fashion").

*correct*. *Compare* March 4, 2019 Corrected Rebuttal Report of Dr. Caitlin Myers (ECF No. 123-1) at 43 (Corrected Fig. R2), Exhibit 1 to Pls. Mot. Exclude Studnicki, *with* Defs. Opp. Studnicki at 5 (criticizing Dr. Myers for using incorrect Virginia abortion rate for 2013). Regardless, Plaintiffs' *Daubert* challenge does not center on the merits of Dr. Myers's analysis, but rather on the standard testing that Dr. Studnicki *never performed*. Pls. Mot. Exclude Studnicki at 6-10. Defendants never so much as mention Dr. Studnicki's failure to perform *any* standard tests on the validity of his time-series analysis. That omission is striking, given the importance of that empirical analysis to Dr. Studnicki's conclusion that Virginia's declining abortion rate stemmed from a downward-trending national rate, and not from any effects associated with the challenged laws and regulations. Studnicki Rep. ¶ 12; Figure 1.

As explained in greater detail in Plaintiffs' Motion, Dr. Studnicki's failure to even test for a structural break in his analysis—much less explain how his model controlled for, or was affected by, such a possibility—is a grave methodological error. Pls. Mot. Exclude Studnicki at 6-10. That error is even more troubling in light of Dr. Studnicki's awareness that Virginia implemented the Licensing Scheme and the Two-Trip Mandatory Delay Law during his benchmark period, *see* Studnicki Rep. ¶ 10. That the break occurs contemporaneously with the implementation of the Licensing Scheme and the Two-Trip Mandatory Delay Law confirms that his analysis is unreliable. *See id*. ¶¶ 10, 12, Fig.1; *see also In re Processed Egg Prod. Antitrust Litig.*, 312 F.R.D. 124, 155 (E.D. Pa. 2015) (finding that a structural break in a time trend indicates that "the variables explaining the market fundamentally changed during the years included in [a] benchmark period").

In their Opposition, Defendants cannot point to a single paragraph in Dr. Studnicki's report or any other evidence that rescues Dr. Studnicki's time-series analysis in the face of Plaintiffs' challenge.

### D. Dr. Studnicki's "demonstrated capacity" concept is not a recognized or reliable methodology for assessing supply and demand.

As Plaintiffs make clear, the metrics that Dr. Studnicki concocted for purposes of this litigation—"demonstrated capacity" to provide abortions and "load"—are not appropriate proxies for output, capacity, utilization, supply, demand, or any other recognized economic concept. Pls. Mot. Exclude Studnicki at 11-13. Defendants are misguided when they assert that "demonstrated capacity" and "load" are merely a "version of supply and demand theory," Defs. Opp. Studnicki at 2, for the simple reason that neither term explains or predicts actual market supply and demand outcomes. Dr. Studnicki posits that low "loads"—what he interprets as an indicator of declining demand for abortion—caused abortion clinics to close. Studnicki Rep. ¶¶ 26-27. But as indicated in Plaintiffs' motion, the clinics that closed actually had *higher* "loads" than those that remained open. Pls. Mot. Exclude Studnicki at 12. In short, Dr. Studnicki's theory predicts that the surviving clinics should have closed, and that the clinics that closed should have survived. *See In re Lipitor Litig.*, 892 F.3d at 634 & n.8 (affirming the exclusion of an expert's testimony, in part because his analysis did not adequately account for false positives) (citation omitted). No part of Dr. Studnicki's "demonstrated capacity" and "load" analysis, in theory or in practice, bears the hallmarks of reliability, and it does not survive *Daubert*'s "preliminary assessment of whether the reasoning or methodology underlying [it] is scientifically valid" and should be excluded. *See Daubert*, 509 U.S. at 593-94 (citation omitted).

Defendants then argue that Dr. Studnicki intends only to opine on industry capacity, and did not look to his "demonstrated capacity" and "load" analysis as a basis to opine on the cause of clinic closures. Defs. Opp. Studnicki at 7. On the contrary, this novel and unsound analysis is the *exclusive* basis for Dr. Studnicki's opinion that "[a]bortion facility closings resulted from the decline in abortion demand, rather than causing it." *See* Studnicki Rep. ¶¶ 26-27. He applied these

6

concepts to evaluate, *clinic by clinic*, the "loads" of the clinics that closed, to derive his conclusions as to the level of financial decline experienced by each clinic, and to account for the "individual clinic records of performance." *See id.* Defendants' efforts to couch Dr. Studnicki's "demonstrated capacity" theory as more limited than it appears on the face of his report is unavailing, and his opinions based on the theory should be excluded

### E. Plaintiffs do not "assume" travel is burdensome, the literature demonstrates that it is, and Dr. Studnicki's "disagreement" is an unreliable criticism.

Bypassing the evidence that Dr. Studnicki is baselessly disputing the findings of an entire body of empirical literature, Defendants instead conjure up a philosophical dispute as to the nature of travel for healthcare access. *See* Defs. Opp. Studnicki at 7-8. Setting aside Dr. Studnicki's disagreement with the conclusions of most researchers and courts that travel is not an "inconvenience" but a concrete "burden," he also opines that travel is not a significant burden because *he does not deem the existing literature believable, and criticizes Dr. Myers's reliance on that literature*. Pls. Mot. Exclude Studnicki at 15-20.

Dr. Studnicki is free to choose not to "accept" the premise that increased travel distances are a likely burden to women seeking abortion care. He is not free to offer an expert opinion that travel distances are an inconvenience but not a burden to women seeking abortions, where the only support for that proposition is his *ipse dixit*, and where an extensive collection of peer-reviewed studies concludes the opposite. *See McEwen*, 404 F. App'x at 791-92 (excluding as unreliable *ipse dixit* an expert's opinion when the proponent of his testimony could not point any portions of the expert's opinions supporting their arguments that there was an appropriate connection between the data and conclusions or that the expert did in fact adequately account for alternative explanations).

As Defendants have failed to offer any meaningful response to Plaintiffs' challenge to Dr. Studnicki as unreliably assuming his conclusion without accounting for the weight of the literature,

7

Plaintiffs submit that, on this basis alone, all of Dr. Studnicki's analysis of Virginia should be excluded. *See* Studnicki Rep. ¶¶ 32-48. Defendants' bare assertion that their expert is reliable is "unavailing," and they have not "carried their burden of presenting evidence" that Dr. Studnicki employs a reliable methodology. *See McEwen*, 404 F. App'x at 792.

## CONCLUSION

Defendants offer no basis in Dr. Studnicki's analysis or opinions to support the admissibility of his testimony, and they fail to respond to many of Plaintiffs' arguments. Defendants are unable to garner even one piece of his opinions that shows a reliable basis for his conclusions. Because Dr. Studnicki's methodological errors, unfounded assumptions, and result-driven analysis are intrinsic to his conclusions, the Court should exclude his testimony in its entirety.

Dated: April 25, 2019

Respectfully submitted,

/s/ D. Sean Trainor
D. Sean Trainor (VSB No. 43260)
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006
Phone: (202) 383-5114
Fax: (202) 383-5414
Email: dstrainor@omm.com

Leah Godesky*
Nathaniel Asher*
O'MELVENY & MYERS LLP
7 Times Square
New York, NY 10036
Phone: (212) 326-2000
Fax: (212) 326-2061
Email: lgodesky@omm.com
Email: nasher@omm.com

Nicole Gloria Tortoriello (VSB No. 91129)
Eden B. Heilman (VSB No. 93554)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF VIRGINIA, INC.
701 E. Franklin Street, Suite 1412
Richmond, Virginia 23219
Phone: (804) 644-8080
Email: ntortoriello@acluva.org

*Attorneys for all Plaintiffs*

Jenny Ma*
Gail M. Deady (VSB No. 82035)
Amy Myrick*
Michelle K. Moriarty*
Rabia Muqaddam*
CENTER FOR REPRODUCTIVE
RIGHTS
199 Water Street, 22nd Floor
New York, New York 10038
Phone: (917) 637-3600
Fax: (917) 637-3666
Email: jma@reprorights.org
Email: gdeady@reprorights.org

*Attorneys for Plaintiffs Falls Church Medical Center, LLC; Whole Woman's Health Alliance; and Dr. Doe*

Alice Clapman*
Hannah Swanson**
PLANNED PARENTHOOD
FEDERATION OF
AMERICA, INC.
1110 Vermont Ave. NW, Suite 300
Washington, DC 20005
Phone: (202) 973-4800
Fax: (202) 296-3480
Email: alice.clapman@ppfa.org

*Attorneys for Plaintiff Virginia League for Planned Parenthood*

\* Admitted Pro Hac Vice

\*\*Motion for Admission Pro Hac Vice to be filed

9

## CERTIFICATE OF SERVICE

     I hereby certify that on April 25, 2019 a copy of the foregoing has been served upon all counsel of record in this action by electronic service through the Court's CM/ECF system.

                                            /s/ D. Sean Trainor
                                            D. Sean Trainor (VSB No. 43260)